No. 48,043

THE STATE OF KANSAS, *Appellee*, v. DAN D. BANDT, *Appellant*.

(549 P. 2d 936)

Opinion filed May 8, 1976.

*Gregory J. Herrman,* of Hays, argued the cause, and was on the brief for the appellant.

*Philip A. Harley,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, and *Roger M. Theis,* assistant attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Dan D. Bandt, was convicted by a jury of three counts of theft. (K. S. A. 21-3701 [*d*]) and one count of illegal removal of a motor vehicle identification number (K. S. A. 1973 Supp. 8-113). The evidence presented at the trial was not greatly in dispute and was essentially as follows: The defendant Bandt and Lyman Coomes entered into a partnership for the purpose of operating a used car lot in Agra, Kansas, and a body shop and salvage yard in Phillipsburg. On October 22, 1973, the defendant first met Clifford Trammel, a friend of Coomes, when

Trammel came to defendant's place of business to purchase a used pickup truck. Delivery of the truck was arranged and the defendant and Trammel agreed that Trammel, being impecunious, would pay the $300 price of the truck by bringing in merchandise to offset that amount. Trammel testified that during a discussion on October 24, 1973, the defendant was informed and understood that the merchandise to be delivered by Trammel would be stolen property. The defendant vigorously denied such an understanding and maintained his innocence.

During the following month Trammel stole a number of items of personal property and delivered them to the defendant. On October 25 or 26 Trammel stole a chain hoist and delivered it to defendant's auto sales lot in Agra. Trammel testified that he specifically informed the defendant how the chain hoist had been obtained some time between October 24 and November 1. At that time Trammel asked the defendant what other items he needed for the shop and defendant told him he needed a welder. On November 1, 1973, Trammel stole a welder and delivered it to the defendant's place of business in Phillipsburg on November 5. Although the defendant was not present at the time of delivery, his son and Trammel unloaded the welder and the defendant acknowledged receiving it two days thereafter. Trammel testified that he told the defendant that the welder had been obtained far enough away that there "would not be any heat on it." An electrical heater was subsequently delivered to the defendant's place of business around December 1, 1973.

There was testimony that during November 1973, Trammel and Coomes discussed stealing some tires and batteries in the presence of the defendant. Defendant admitted that he was present but he merely listened and did not participate. Trammel and Coomes testified that the defendant was in on the plan. There was also testimony from Coomes that he received a stolen camera from Trammel about this same time. There was additional testimony from Trammel and Coomes about other stolen items. At the trial the chain hoist, welder and electrical heater were admitted into evidence having been identified by both Trammel and the respective victims as stolen property. Trammel fully admitted his participation in the thefts and delivery of the property to the defendant and later pled guilty to the theft of these items. The defendant Bandt testified in his own defense and, although he admitted receiving the three items in question (hoist, welder, and heater) from

Trammel, he denied any prior arrangement or understanding he was to receive stolen property from Trammel and further denied any knowledge that the items were stolen at the time he received them. Defendant conceded that several weeks after his receipt of the items he did become suspicious.

Respecting the charge of illegal removal of a motor vehicle identification number, the evidence showed that the vehicle that Trammel had purchased from the defendant had a lien on the title which precluded Trammel from obtaining a current license plate for the truck. The defendant took Trammel to his used car lot where the identification number was removed from another vehicle and given to Trammel. By the use of this identification number a title and a current license tag were obtained for Trammel's vehicle. At the trial the only real issue in the case was whether the defendant knew that the three items of personal property were stolen articles at the time he received them from Trammel. The state's evidence tended to prove that the defendant Bandt was well aware of the nature of the articles at the time they were received by him. The defendant denied that he had any knowledge that the articles were stolen and testified that he became suspicious of the activities of his cohorts some time after he had received the articles. The defendant was convicted and he appeals to this court claiming trial errors.

The defendant's first point on this appeal is that K. S. A. 21-3701 (d) is unconstitutional for the reason that it is vague, indefinite, and uncertain. The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process of the law under the Fourteenth Amendment to the United States Constitution. (*State v. Conley,* 216 Kan. 66, 531 P. 2d 36.) The statute to be considered is K. S. A. 21-3701 (d) which is one of the sections of K. S. A. 21-3701, a comprehensive theft statute adopted as a part of the new Kansas Criminal Code effective July 1, 1970. The statute in its entirety is as follows:

"21-3701. Theft. Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:

"( a )  Obtaining or exerting unauthorized control over property; or

"( b )  Obtaining by deception control over property; or

"( c )  Obtaining by threat control over property; or

"( d )  *Obtaining control over stolen property knowing the property to have been stolen by another.*

"Theft of property of the value of fifty dollars ( $50 ) or more is a class D felony. Theft of property of the value of less than fifty dollars ( $50 ) is a class A misdemeanor.

"Nothing herein shall prohibit the removal in a lawful manner, by towing or otherwise, of personal property unlawfully placed or left upon real property."

Prior to the enactment of the present criminal code the Kansas law of theft followed a traditional pattern of fragmentation. The law maintained the historical distinctions among larceny, embezzlement, false pretenses, receiving stolen property, and a number of other offenses. The comment of the Judicial Council at the time it proposed the theft statute in 1968 declared that the new proposed statute consolidates the present crimes of larceny, embezzlement, false pretense, extortion, and receiving stolen property and the like into a single crime of theft. The former distinctions are historical but apparently served no useful purpose. They tended to make the former law unduly complex, and created unnecessary problems in pleading and proof. Professor Paul E. Wilson in his excellent article points out that the new Kansas theft law did not change the basic natures of the crimes the new act comprehends. ( Thou Shalt Not Steal: Ruminations on the New Kansas Theft Law, 20 Kan. L. Rev. 385, [1972].) We refer the reader to that article for a comprehensive discussion of the historical background and the objective sought in the consolidation of the state's theft laws into a single statute.

K. S. A. 21-3701 ( d ) codifies the offense commonly known heretofore as receiving stolen property. ( *State v. Maier*, 214 Kan. 547, 520 P. 2d 1258. ) The former statute was K. S. A. 21-549. The offense defined in 21-3701 ( d ) simply requires proof by the state that the defendant at the time he received stolen property had a belief or a reasonable suspicion from all the circumstances known to him that the property was stolen and that the act was done with intent to deprive the owner permanently of the possession, use or benefit of his property. ( *State v. Burgett*, 174 Kan. 102, 254 P. 2d 254; *State v. Emory*, 116 Kan. 381, 226 Pac. 754. ) The statute

provides a sufficient warning to the average person as to what activities are proscribed. The essential words in the statute are specifically defined in the general definition section, K. S. A. 21-3110 as follows:

"'Obtain' means to bring about a transfer of interest in or possession of property, whether to the offender or to another." (Sec. 11.)

"'Obtains or exerts control' over property includes but is not limited to, the taking, carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property." (Sec. 12.)

"'Stolen property' means property over which control has been obtained by theft." (Sec. 23.)

"To 'deprive permanently' means to:

"(a) Take from the owner the possession, use or benefit of his property, without an intent to restore the same; or

"(b) Retain property without intent to restore the same or with intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return; or

"(c) Sell, give, pledge or otherwise dispose of any interest in property or subject it to the claim of a person other than the owner." (Sec. 6.)

When 21-3701 (d) is read along with these statutory definitions in 21-3110, any reasonable person should have a sufficient warning as to the conduct proscribed. Here both the state and the defendant on this appeal agree that the elements of knowledge and receipt of stolen property must coexist simultaneously under the statute. We have no hesitancy in holding that K. S. A. 21-3701 (d) is not unconstitutional as being vague, indefinite, and uncertain. We wish to make it clear that the defendant was not charged in the alternative under sections (a), (b), or (c) of 21-3701. The elements necessary to prove theft under those sections are not involved in this case.

The defendant's next two points involve the same basic issue arising from circumstances at the trial where the jury sought clarification of the law and the trial court refused to give the jury further instructions. After all of the evidence had been introduced in the case, the trial court instructed the jury as to the essential elements of the crime of theft. The instructions which were given with respect to the three counts of theft generally followed PIK Criminal 59.01. The elements instruction pertaining to count No. 1 was as follows:

"No. 1

"The defendant is charged in Count 1 of the Information with a crime of theft. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:

"(1) That Petroleum Management, Inc. was the owner of the Lincoln Arc Welder;

"(2) That the defendant obtained control over said property, knowing the property to have been stolen by another;

"(3) That the defendant intended to deprive Petroleum Management, Inc. permanently of the use and benefit of the property, and

"(4) That the act occurred on or about the _____ day of November, 1973, or within a period of two years prior to January 18, 1974, the date of the filing of the complaint in this case, in Phillips County, Kansas."

Similar instructions were given covering the theft counts, Nos. 2 and 3. Counsel for the defendant did not object to this instruction.

The difficulty arose in this case after the jury had retired to deliberate. After a period of time the foreman sent word to the trial judge that the jury had a question it wanted to discuss with the judge. The trial court brought the jury back into the courtroom and the following colloquy took place:

"THE COURT: I understand you have something you want to talk to me about.

"MR. HENSLEY: (foreman of jury) Yes. We would like to ask for some guidance, wisdom, clarification, should I ask right now?

"THE COURT: All right. I don't know whether I can answer it or not.

"MR. HENSLEY: As far as knowing that the property is stolen, let's say, that item is taken into possession by a person, and the time comes, that time he must know it was stolen, let's say, two weeks later, it dawns upon him that it might be stolen and is still knowingly in control of the stolen property. At that time is he under the same kind of guilt as he would be if he knew the moment it arrived that it was stolen?

"THE COURT: What do you have to say about it?

"MR. HENSLEY: Judge, it's No. 2 under the instructions to us. That question, No. 2 of the instructions on each of the instructions, on each of the three counts. It states that at the time of possession did such person know that it was stolen. Some of us are apparently under the feeling that at the exact time someone takes an article, if he did not know it was stolen, then he can not be found guilty as charged. Some feel that this means that at anytime he possesses an article, if he found out that it was stolen or was hot merchandise, that it was under his possession, then this No. 2 goes toward finding him guilty.

"THE COURT: Let me see the instruction. I left my copy in there.

"MR. HAHN: (county attorney) Yes, Your Honor, I would say that it would be my feeling while the possession continues, that the knowledge is there. And if it was there at anytime while the possession was continuous, then that would be depriving the owner of the property. At any particular time this intent is formed or that knowledge is there, that it would have to be construed that way, Your Honor.

"THE COURT: What do you say, Mr. Herrman?

"MR. HERRMAN: (defense counsel) If the Court please, I don't know that the question should be argued in front of the jury. Of course my understanding

of the law is crystal clear, that you have to know it was stolen at the time you obtained possession, that's when the crime was committed, on or about that date. I think the law is crystal clear on it, Your Honor.

"THE COURT: Well, ladies and gentlemen, as I told you, I am rather restricted by rules of the Supreme Court, and these instructions are taken from what we call the 'PIK Instructions' which are pattern instructions written by the District Judge's Association, and of course this is just copied out to advise you further on the matter at this time. I don't think I can do it. I have my own opinion what it means, but I don't think I am permitted to tell you now.

"MR. HENSLEY: Our problem, we all have opinions on this and this doesn't let us make a decision at this point.

"THE COURT: Well, I realize that, but as I say, the Supreme Court has restricted me rather thoroughly on giving any additional instructions, and District Judges have furnished this PIK Instruction, and that is what this is.

"MR. HENSLEY: Can you explain which of the two are correct?

"THE COURT: No. If I did I would be telling you what to do. I am sorry, I am just simply restricted from giving you additional information. I am afraid I can't, the law doesn't permit me to do it. Now, I take it you haven't reached a verdict in this case, then?

"MR. HENSLEY: We have taken one vote and it is not unanimous vote.

"THE COURT: Without telling how you stand, is it close?

"MR. HENSLEY: No."

Following this colloquy, the trial court sent the jury back to its deliberations and in due course the jury returned a verdict of guilty on all counts. The defendant contends that the trial court erred in refusing to give the jury supplemental instructions as to the law on the question presented by the jury to the court, and especially so after permitting counsel for the defendant and the prosecutor to present their opposing views on the question of law raised. In our judgment the defendant's point is well taken and justifies a reversal of the case and the granting of a new trial on the three counts of theft. As pointed out heretofore the key issue in the case was whether the defendant Bandt had knowledge that the items of personal property were stolen at the time he received them from Trammel. The state's testimony indicated that he had such knowledge. The defendant's testimony to the contrary was that the defendant received knowledge that the items of personal property were stolen only at a later time after he had already obtained possession of the articles. The question presented to the court by the jury raised a clear-cut question of law which the trial court had a duty to answer. In charging a jury in a criminal case it is the duty of the trial judge to define the offense charged, stating to the jury the essential elements of the crime, either in the language of the statute or in appropriate and accurate words of his own. (*State v. Finley*, 208 Kan. 49, 490 P. 2d 630.)

Here the original instructions given by the court relevant to the elements of the crime of theft under 21-3701 (*d*) as set forth above were essentially correct. The instruction placed upon the state the burden of proving that the defendant obtained control over each item of personal property, knowing the property to have been stolen by another. Normally, the instruction as given would have been sufficient. In this case, however, the jury obviously was confused and wanted to have the matter clarified. Under the circumstances the trial court was obligated to further instruct the jury as required by K. S. A. 1973 Supp. 60-248 (*e*) which provides as follows:

"60-248.  Jury trial procedure.

. . . . . . . . . . . . .

"(*e*) *Jury may request information after retiring.* After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, . . ."

The difficulty in the present case is that after refusing to give a further instruction on the question of law raised, the trial court permitted counsel for the parties to present to the jury their conflicting statements of the law. This obviously had the effect of requiring the jury to determine the question of defendant's guilt or innocence without having the key question of law in the case determined by the trial court. As noted in the colloquy set forth above, the trial court permitted the county attorney to advise the jury that the defendant would be guilty under the statute if at any time while the defendant had possession of the stolen articles he obtained knowledge that the items were stolen. With commendable candor the attorney general in his brief concedes that the county attorney's analysis of the law was incorrect but argues that no prejudicial error was committed thereby. We cannot agree. In view of the confusion of the jury the trial court had a positive duty to clarify its former instructions by instructing the jury that the defendant must have had knowledge that the property was stolen at the time it was delivered to him by Trammel. The failure of the trial court to give to the jury this additional information was clearly prejudicial and denied to the defendant a fair trial. We wish to make it clear that instances may sometimes occur in the course of a trial where the jury raises questions which are irrelevant or which are already adequately covered by the original instructions. Under those circumstances the trial court

may decline to answer such questions and direct the jury to re-read the instructions already given. A trial court is vested with a great amount of discretion in answering questions directed to him by a jury after the jury has begun its deliberations. The important consideration is that the jury be properly instructed on the essential issues presented at the trial and this is particularly true in a criminal proceeding where the question presented by the jury involves the basic elements of the criminal offense on which the defendant is being tried.

As another point on this appeal the defendant maintains that the trial court erred in permitting the prosecutor to bring to the attention of the jury evidence of other conversations between defendant, Coomes and Trammel on subjects not connected with the specific charges contained in the information. As we analyze the defendant's argument, he is complaining about evidence of conversations between the defendant, Trammel and Coomes in which there were discussions about obtaining other items of personal property including tires, batteries, cameras, railroad ties, and a motorcycle. This evidence developed at trial by the prosecutor tended to show that the defendant, Trammel, and Coomes were participating in a continuing criminal scheme whereby Trammel and Coomes would steal items and transfer them to the defendant for ultimate sale. The evidence challenged by the defendant did not in fact show the actual commission of other crimes by him. There was a conversation between the defendant and Trammel wherein the latter's obtaining a motorcycle for the defendant was mentioned. However, nothing resulted from this conversation. A similar conversation was testified about concerning a color television set to which no objection was lodged. The county attorney asked the witness Coomes whether he had ever obtained any railroad ties for the defendant and the witness denied it. At no time was there any mention that the ties might have been procured illegally. In our judgment such evidence was relevant and admissible to show the defendant's intent and guilty knowledge of the nature of Trammel's activities.

The other complaint under this point involves evidence of the defendant's prior arrests and bad checks. On direct examination of the defendant by his counsel, defendant testified that he had never "been arrested for anything other than speeding tickets." On cross-examination the prosecutor brought out the fact that the defendant had been arrested for the illegal display of license

plates, had been charged in Phillips county court with an insufficient fund check, and had been charged with displaying trailer tags on a trailer not assigned to him. Other improprieties were also mentioned. It is clear from the record that the defendant placed his credibility and good character in issue on direct examination by his testimony that he had never been arrested for anything other than speeding tickets. Such testimony opened the door to cross-examination by the prosecutor on defendant's prior arrests and charges. We find no error in the trial court's ruling on this point.

The final point raised on this appeal is that the evidence was insufficient to sustain the convictions. We do not agree. The conflicting testimony raised an issue of fact as to whether the defendant had knowledge that the three items of personal property were stolen at the time they were delivered to him by Trammel. The defendant is not entitled to be discharged from further prosecution because of insufficiency of the evidence.

On this appeal the defendant has raised no points of claimed trial errors which would justify the reversal of his conviction and sentence for illegal removal of a motor vehicle identification number under K. S. A. 1973 Supp. 8-113 as charged in count No. 5 of the information. Accordingly, we reverse only the district court's judgments and sentences for the offenses of theft as charged in counts 1, 2, and 3 of the information and the case is remanded for further proceedings on those counts. The trial court's judgment and sentence for the offense of illegal removal of a motor vehicle identification number as charged in count No. 5 is affirmed.

IT IS SO ORDERED.