No. 95,365

STATE OF KANSAS, *Appellee*, v. MATHEW D. MURDOCK, *Appellant*.

(187 P.3d 1267)

662

Opinion filed July 18, 2008.

*Rick A. Kittel*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Robert A. Walsh*, county attorney, argued the cause, and *Phill Kline*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: We granted Mathew D. Murdock's petition for review from a Court of Appeals decision affirming his conviction of aggravated battery with a deadly weapon. The defendant claims that the trial court erred by allowing the State to reopen its case to present additional evidence on an element of the offenses charged. He also claims that he was not adequately represented by counsel and that the trial court erred when responding to a jury question during its deliberations. We affirm.

Facts

In November 2004, Lucas Diehl confronted Murdock at a party in Concordia, Kansas, asserting that the defendant had slashed the tires on Diehl's truck. The two men continued to exchange words, and the defendant challenged Diehl to a fight. Diehl declined and walked a short distance away.

Allan Jackson attempted to calm the defendant, who showed Jackson a set of brass knuckles that he wore on his right fist. Jackson left Murdock to warn Diehl about the brass knuckles. While he and Diehl were talking, the defendant approached and struck Diehl on the top of the head. Diehl fell to the ground. When he was able to stand, Jackson attempted to help Diehl get away from the confrontation, but the defendant again struck Diehl on the back of the head. Diehl's head bled profusely, but he did not seek medical treatment. He did, however, complain of headaches and dizziness for several days after the incident.

After the State rested its case, Murdock moved for a judgment of acquittal, claiming that the State had failed to produce evidence that he struck Diehl with an object that could constitute a deadly weapon. The district court overruled the motion, stating that the jury could conclude based on circumstantial evidence that the defendant had struck Diehl while wearing brass knuckles.

During a short recess, the prosecutor reviewed the record and discovered that Jackson had never actually testified that the defendant wore the brass knuckles when he struck Diehl. Over the defendant's objection, the district court allowed the State to reopen its case in chief in order to recall Jackson. Jackson subsequently testified that he saw the defendant wearing the brass knuckles immediately after striking Diehl. The State then rested its case again.

After the district court denied a second motion for judgment of acquittal, Murdock moved for a mistrial based upon ineffective assistance of counsel, claiming that defense counsel's behavior in raising the issue of insufficiency of the evidence at the close of the State's case in chief—and thus bringing the question to the State's attention—was constitutionally deficient. The district court denied this motion.

At the close of all evidence, the case was submitted to the jury. During deliberations, the jury requested clarification on the difference between aggravated battery with a deadly weapon and aggravated battery in a manner whereby great bodily harm, disfigurement, or death can be inflicted. The court called the jury into the courtroom in order to clarify what was being asked and immediately provided a lengthy response to that question from the bench. Defense counsel did not object to the court's explanation.

The jury resumed deliberations and found Murdock guilty of aggravated battery by use of a deadly weapon—K.S.A. 21-3414(a)(1)(B). The defendant appealed, and the Court of Appeals affirmed his conviction in an unpublished opinion. *State v. Murdock*, No. 95,365, unpublished opinion filed August 17, 2007.

Petition for Review

Murdock raises three issues in his petition for review of the Court of Appeals opinion: (1) whether the district court erred when

it denied the defendant's motion for judgment of acquittal at the close of the State's case in chief and instead permitted the State to reopen its case in order to present additional evidence; (2) whether the court erred when it denied his motion for a mistrial based on ineffective assistance of counsel; and (3) whether the court's response to the jury's question during deliberations was reversible error.

We note at the outset that the first issue actually presents two separate but related questions. The first question involves the district court's denial of the defendant's motion for acquittal. The second deals with the district court's decision to permit the State to reopen its case in order to present additional testimony on elements of the charged offense. Our standard of review for each question is different, so we examine each of these questions individually.

After reviewing all of the issues raised, we conclude that no reversible error occurred and affirm.

## (1) MOTION FOR JUDGMENT OF ACQUITTAL

The defendant argues that the district court erred when it denied his original motion for judgment of acquittal, claiming that the State failed to present any evidence that he had struck Diehl with a deadly weapon or in a manner in which great bodily harm could be inflicted.

### *Standard of Review*

K.S.A. 22-3419(1), which governs Kansas courts' consideration of motions for judgment of acquittal, provides in relevant part:

"The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more crimes charged in the complaint, indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such crime or crimes."

Just as a district court must base its ruling regarding a defendant's motion for judgment of acquittal on the sufficiency of the evidence, an appellate court reviewing a district court's grant or denial of such a motion examines the sufficiency of the evidence to support the conviction. *State v. Cavaness*, 278 Kan. 469, 479,

101 P.3d 717 (2004). The proper standard for considering a district court's ruling on a motion for judgment of acquittal is whether, after reviewing all of the evidence in the light most favorable to the State, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. 278 Kan. at 479.

### Discussion and Analysis

After the State presented its evidence and rested, the district court granted a recess and held a conference on the record in chambers in the presence of the judge, counsel, and the defendant. At this time, defense counsel moved for a judgment of acquittal on the basis that there was no evidence that the defendant struck the victim in a manner whereby great bodily harm was inflicted or with any kind of an object that could constitute a deadly weapon. The following exchange occurred in chambers:

"[Defense Counsel]: Judge, I would like to make a motion for judgment of acquittal. The state [has] charged Mr. Murdock with intentionally causing bodily harm with a deadly weapon or in a manner whereby great bodily harm, disfigurement, or death could be inflicted. The evidence has not indicated that Mr. Murdock struck Mr. Diehl with any kind of an object that would constitute a deadly weapon.

"The testimony at best is that Mr. Jackson saw an arm come around, and Mr. Diehl got struck, and then he was struck a second time. But Mr. Jackson did not testify that he saw Mr. Diehl get struck with brass knuckles. He only testified to that he saw brass knuckles in the possession of Mr. Murdock.

"Further, before the incident even occurred there's been no testimony that the manner in which Mr. Diehl had been struck was capable or could cause great bodily harm, disfigurement or death. So I would submit to the Court that the evidence is insufficient to sustain a conviction on either theory, either deadly weapon or manner whereby.

"THE COURT: Mr. Walsh?

"[Prosecutor]: My recollection of the testimony was that he did early on in the testimony indicate that when he was struck he saw the fist with the brass knuckles come around and strike Mr. Diehl. Now, if there's confusion about that, I would ask the Court the leave to allow us to call him up and ask him that directly. I have rested. We have had no evidence from the defense at this time.

"If there is some of that, I would certainly like to allow just very brief testimony to cover that issue, whether the brass knuckles were on his hand or not when those blows were struck. My recollection was that he did indicate that. I'm not questioning Ms. McKenna's recollection. I have that in my notes, but that could

have been just my outline. But I would certain[ly] like to ask him that. I would ask leave to just allow us [to] call him back to state that.

"THE COURT: Well, that motion would be denied, and the motion for directed verdict is likewise denied. There's certainly evidence, if not direct, substantial [evidence, then] circumstantial evidence from which the jury could conclude guilt beyond a reasonable doubt on either theory."

Before the defendant's motion for acquittal and during the State's case in chief, Jackson testified that during his talk with Murdock, the defendant showed him a set of brass knuckles that he was wearing on his right hand. According to Jackson, the defendant said that "he was tired of it [meaning the dispute between the defendant and Diehl] going on, and he was going to take care of it." Jackson testified that he was concerned about these statements and the defendant's possession of the brass knuckles, so he went directly from his conversation with the defendant to warn Diehl of the danger. Jackson explained that when he went to warn Diehl, he "didn't even get all the words out of [his] mouth" when the defendant struck Diehl from behind. Jackson demonstrated during his testimony that the defendant struck Diehl with his right hand.

Jackson further testified that when the defendant hit Diehl, Diehl's head "flew forward," and Jackson heard a "knock" like one hears "on TV where they crack coconuts open, that initial knock before it splits open." Although he did not check Diehl's head after the first blow, Jackson stated that he put his hand behind Diehl's head after the second blow "to protect it in case it got hit again," and his hand became covered with blood.

Diehl testified that when Murdock struck him, he "felt something hard" and "solid" hit him in the back of the head. He explained that after the blows, he felt blood "running" down his neck. The State offered as evidence pictures of the cuts on the back of Diehl's head to corroborate this testimony. Diehl also testified that he experienced "dizzy spells and . . . headaches" for 3 days after the incident.

Murdock argues that the district court erred in denying his motion for acquittal because, although Jackson testified that defendant had been wearing the brass knuckles shortly before striking Diehl, none of the State's witnesses testified that the defendant was wear-

ing brass knuckles *when he hit Diehl.* Thus, according to the defendant the State did not present sufficient evidence that he struck Diehl with a deadly weapon, or struck him in such a manner whereby great bodily harm could be inflicted.

Murdock also argues the district court erred when it denied his motion for judgment of acquittal because it was under the impression that Jackson had testified that he observed Murdock wearing the brass knuckles as he struck Diehl. Murdock asserts that because the district court had a fundamental misunderstanding as to the evidence in the record, it was an abuse of discretion to deny the motion and yet allow the State to reopen its case.

It is true the district court stated that before it conferred with the court reporter, "[i]t was [the court's] recollection that there had been some testimony" about the brass knuckles on the defendant immediately prior to the blow to Diehl. Thus, Murdock is correct that the district court was under the impression that such evidence was in the record when it denied his motion for judgment of acquittal.

Murdock's argument seems to mingle and confuse the standards for reviewing a district court's denial of a motion for judgment of acquittal with a district court's decision to permit the State to reopen its case to present additional evidence. As we discuss later in this opinion, a court has broad discretion as to the latter determination. However, K.S.A. 22-3419(1) states that a court *"shall* order the entry of judgment of acquittal" if the evidence offered is insufficient to support the conviction. (Emphasis added.) The decision to grant a motion for judgment of acquittal is not discretionary. Instead, the determinative question for both a district court and an appellate court on review is whether there was sufficient evidence in the record at the time of the motion on which a rational factfinder could find the defendant guilty beyond a reasonable doubt. See *Cavaness,* 278 Kan. at 479.

For Murdock to be convicted of aggravated battery as charged, the State was required to prove that he "intentionally caus[ed] bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 21-3414(a)(1)(B). Viewing the evidence in the light

most favorable to the prosecution, there was sufficient evidence in the record at the (initial) close of the State's evidence—when Murdock raised his motion for judgment of acquittal—from which the jury could have found Murdock guilty of either aggravated battery with a deadly weapon or aggravated battery in a manner whereby great bodily harm could be inflicted. Jackson testified that Murdock had been wearing the brass knuckles on his right hand only shortly before that same hand struck Diehl twice in the back of the head, and just after Murdock had told Jackson that he "was going to take care of it." Diehl explained that he felt something "hard" and "solid" hit his head when Murdock struck. Although Murdock only hit Diehl twice, Diehl's head bled profusely from the blows. The district court did not err when it denied Murdock's motion.

Murdock's motion for judgment of acquittal seems to have been based on a belief that because the State had not offered any *direct* evidence that the defendant had been wearing brass knuckles when he hit Diehl—namely, testimony that he was observed wearing the knuckles when he attacked—the evidence could not be sufficient to convict him of the crimes charged. Contrary to this position, Kansas courts have long recognized that evidence may be sufficient to support a conviction even where that evidence is wholly circumstantial in nature. For example, in *State v. Scott*, 271 Kan. 103, 107-08, 21 P.3d 516, *cert. denied* 534 U.S. 1047 (2001), this court explained:

"A guilty verdict in a criminal case will not be disturbed on appeal if there is substantial evidence even though the evidence is entirely circumstantial. [Citation omitted.] The probative values of direct and circumstantial evidence are intrinsically similar, and there is no logically sound reason for drawing a distinction as to the weight to be assigned to each. [Citation omitted.]"

Although there was no direct evidence to show that Murdock attacked Diehl while wearing the brass knuckles, there was circumstantial evidence from which a rational jury could base a finding of guilt. Our review of the evidence presented by the State before the defendant moved for judgment of acquittal, when viewed in the light most favorable to the State, convinces us that a rational factfinder could have found the defendant guilty of aggravated battery

under either theory advanced. The district court applied the same standard and concluded that there was "substantial circumstantial evidence from which the jury could conclude guilt beyond a reasonable doubt on either theory." The district court did not err in denying the defendant's motion for judgment of acquittal.

(2) Motion to Reopen the State's Case

Murdock asserts that the alleged error that resulted from the district court's denial of his motion for judgment of acquittal was compounded by the fact that the court permitted the State to reopen its case to offer additional evidence.

After conferring with the court reporter and counsel, the court noted that Jackson never explicitly stated that Murdock was wearing the brass knuckles at the time that he struck Diehl. Upon this recognition, the court permitted the State to reopen its case for the specific purpose of recalling Jackson. When he was recalled, Jackson testified that he saw Murdock wearing the brass knuckles immediately after each time he struck Diehl.

The Court of Appeals found that by permitting the State to reopen its case, the district court had "reconsidered its ruling" on Murdock's motion for judgment of acquittal and "essentially set aside its prior ruling." *Murdock*, slip op. at 4. The Court of Appeals then concluded that it could consider "all of the evidence presented in the State's case in chief, including the additional testimony supplied by Jackson," to determine whether the evidence was sufficient to allow a rational factfinder to find the defendant guilty beyond a reasonable doubt. Slip op. at 4. In support of this conclusion, the panel cited this court's decision in *State v. Copes*, 244 Kan. 604, 607, 772 P.2d 742 (1989).

In *Copes*, this court examined the waiver rule relating to motions for judgment of acquittal, noting that a defendant whose motion for judgment of acquittal is denied at the close of the prosecution's case, who later presents evidence on his or her own behalf, may not ordinarily challenge the denial of that motion. 244 Kan. at 607-08. *Copes* modified this rule to hold that when, after unsuccessfully moving for acquittal at the close of the State's case, a defendant presents only rebuttal evidence, he or she has not waived argument

regarding the erroneous denial of his or her motion. 244 Kan. at 610-11. Notably, *Copes* did not involve facts where the State was permitted to reopen its case to submit additional evidence after a motion for judgment of acquittal was denied.

Contrary to the statement by the Court of Appeals, the district court in this case never stated that by allowing the State to reopen its case, it was reconsidering its ruling on Murdock's motion for judgment of acquittal. The court did explain in its later ruling on Murdock's motion for a mistrial, discussed later in this opinion, that "the Court has broad discretion making that decision [to allow the State to reopen its case] and felt the [S]tate inadvertently overlooked [the intended testimony] and was entitled to reopen it to complete its record." The district court did *not* state that it had permitted the State to reopen its case so that there would be sufficient evidence to convict the defendant.

We emphasize at the outset of our discussion of this issue that the district court's decision permitting the State to reopen its case does not alter our conclusion that there was sufficient evidence in the record to find Murdock guilty beyond a reasonable doubt at the time that Murdock originally moved for judgment of acquittal. As we have previously indicated, there was sufficient evidence for a jury to find that Murdock was guilty beyond a reasonable doubt of the crime charged when the State originally closed its case in chief, and we need not consider Jackson's additional testimony on recall in our assessment of the sufficiency of the evidence in this case.

Thus, this case does not involve circumstances where the prosecution has failed to present evidence on a critical element of a criminal charge but nevertheless rested its case and then sought to reopen. The issue framed by Murdock in his petition for review— whether a district court may allow a State to reopen its case in order to prove an element of the crime charged in lieu of granting a defendant's motion for judgment of acquittal—does not arise in this case. Because there was sufficient evidence in the record at the time that Murdock moved for judgment of acquittal for a jury to conclude that he was guilty beyond a reasonable doubt of the crime charged, the district court correctly denied his motion, and

that denial does not factor into our consideration of the district court's subsequent decision allowing the State to reopen its case.

With these clarifications in mind, we turn to our standard for reviewing the district court's decision in this case.

*Standard of Review*

We review a district court's decision to permit the State to re-open its case after once resting for an abuse of discretion. "It has long been the law of Kansas that the granting of permission to the state to reopen its case rests in the sound discretion of the trial court. [Citations omitted.]" *State v. Braun*, 209 Kan. 181, 188, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972). Again in *State v. Carmichael*, 240 Kan. 149, 157, 727 P.2d 918 (1986), this court determined that it is "a matter of discretion whether the trial court permits either or both of the parties to reopen a case for introduction of additional evidence after having rested. [Citation omitted.]"

Judicial discretion varies, depending on the character of the question presented for determination. A district court's decision is protected if reasonable persons could differ about the propriety of the decision, as long as it was made within and took into account the applicable legal standards. *State v. Miller*, 284 Kan. 682, 689, 163 P.3d 267 (2007).

Yet while examination of our previously decided cases confirms that we review a court's decision on a motion to reopen for an abuse of discretion, our past decisions have not sufficiently identified those factors which should guide the district court in its determination of whether to permit either party to reopen its case. Federal cases have considered this question and have developed a list of factors to guide the district courts' discretion in such matters. As the Sixth Circuit Court of Appeals explained in *United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985):

"A motion to reopen is clearly within the discretion of the trial court. In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not 'imbue

the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.' *United States v. Larson,* 596 F.2d 759, 778 (8th Cir. 1979)."

See also *United States v. Webb,* 533 F.2d 391, 395 (8th Cir. 1976) (stating the district courts should consider "whether the evidence caused surprise to the defendant, whether he was given adequate opportunity to meet the proof, and whether the evidence was more detrimental to him because of the order in which it was introduced").

*Blankenship* further notes that the "most important consideration" in determining whether a party should be permitted to reopen its case is "whether the opposing party is prejudiced by reopening." 775 F.2d at 741. The court continued:

"One of the critical factors in evaluating prejudice is the timing of the motion to reopen. If it comes at a stage in the proceedings where the opposing party will have an opportunity to respond and attempt to rebut the evidence introduced after reopening, it is not nearly as likely to be prejudicial as when reopening is granted after all parties have rested, or even after the case has been submitted to the jury. Where, as in this case, reopening is permitted after the government has rested its case in chief, but before the defendant has presented any evidence, it is unlikely that prejudice sufficient to establish an abuse of discretion can be established." 775 F.2d at 741.

We believe that the factors identified by the Sixth Circuit in *Blankenship* provide appropriate guidelines for a district court in responding to a party's motion to reopen its case after resting. While there may be other factors not mentioned that may govern the unique circumstances of another case, the *Blankenship* factors provide guidance for a district court's discretion—and for this court when reviewing the exercise of such discretion.

*Discussion and Analysis*

After denying the defendant's motion for acquittal but before returning to the trial before the jury, the court in chambers again considered the State's request to reopen its case, with the following exchange taking place at that time:

"[Prosecutor]: And Your honor, I would still request that I—without looking at the transcript, be allowed just to call Mr. Jackson back just briefly again, ask him the questions during the blows, if or if he did not see the knuckles on—the brass

knuckles on Mr. Murdock's hand. That would be the only question I would ask him.

"[Defense Counsel]: Of course, I would object to that, Judge.

"THE COURT: The evidence is in. And I would say this: If the—when the court reporter has a little time, if you want to go back through that.

"[Prosecutor]: That would be helpful, Judge. Thank you.

"THE COURT: Thank you very much.

"(Proceedings were recessed. Following the recess, proceedings were resumed in chambers with counsel and Mr. Murdock present.)

"THE COURT: We'll go on the record. The court is in chambers again with counsel. Prior to the court reconvening I suggested Mr. Walsh check with the court reporter to see if her notes would indicate anything about the brass knuckles. It was my recollection that there had been some testimony.

"She was unable to find any in a cursory examination. And Mr. Walsh, as I understand, has again renewed his motion to open the state's case for the sole purpose of inquiring into this question of whether or not Mr. Allan [Jackson] saw brass knuckles on the defendant immediately prior to a strike, as I understand.

"[Prosecutor]: Or at about the same time; prior—about or after.

"THE COURT: That is your motion?

"[Prosecutor]: That is my motion, Your Honor.

. . . .

"[Defense Counsel]: And, Judge, I strongly object. I made my motion for judgment of acquittal based on the fact I knew that the witness had not testified that he saw my client, Mr. Murdock, strike Mr. Diehl with brass knuckles. All the testimony has been is that Mr. Diehl was struck from behind while he was standing by him, an arm come around.

"I made my motion for judgment of acquittal based on that lack of testimony. Now, if the Court permits this, I feel like I am not effectively representing Mr. Murdock, having made that motion, and I have not done him the job that I should do. So I believe it's highly prejudicial to him to allow this testimony to be presented and would object to the state being able to reopen their case.

"THE COURT: Very well.

"[Defense Counsel]: In particular in light of my motion for judgment of acquittal.

"THE COURT: The motion is noted and the state's motion to reopen is granted."

A district court has broad discretion to determine when a party should be allowed to reopen its case to offer additional evidence. *Carmichael*, 240 Kan. at 157; *Braun*, 209 Kan. at 188. Nevertheless, the decision to allow a party to reopen its case after resting is not one to be taken lightly in a criminal case. In this case, we do not have the benefit of the exact reasons that the district court

permitted the State to reopen its case, but we do have a full record of the proceedings, and the facts are not in dispute. We are therefore in a position to review the district court's decision in light of the *Blankenship* factors.

### Timeliness of Motion

The State moved to reopen its case immediately after resting its case in chief and before the defendant offered any testimony or other evidence. The timing of the reopening allowed defendant the opportunity to respond and attempt to rebut the additional evidence. Admitting such evidence at this time of trial would not imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude the defendant from having an adequate opportunity to meet the additional evidence offered. "Where, as in this case, reopening is permitted after the government has rested its case in chief, but before the defendant has presented any evidence, it is unlikely that prejudice sufficient to establish an abuse of discretion can be established." *Blankenship*, 775 F.2d at 741.

### Prejudice

We note at the outset of our consideration of prejudice that the evidence sought to be admitted by the State through Jackson's recall testimony was evidence presented at the preliminary hearing. Jackson's testimony was thus known to the defendant and the defendant prepared his case knowing he would have to defend against the evidence presented by the State upon the grant of its motion to reopen. It cannot be said that the defendant was surprised by the evidence.

We also find that the evidence the State desired to offer by way of Jackson's testimony was relevant, admissible, adequate, and helpful to the jury in ascertaining Murdock's guilt or innocence. The reason given by the State for not presenting this evidence during its case in chief was oversight. This court has previously found that it is within a district court's discretion to allow a party to reopen its case to correct an "oversight" as to the admission of evidence when the admission of such evidence is not overly prejudicial. See *Braun*, 209 Kan. at 188-89.

Considering these factors, we conclude that reasonable people could differ about the propriety of the district court's decision permitting the State to reopen its case in the circumstances of this case. Thus, the defendant has failed to establish that the district court abused its discretion.

### (3) MOTION FOR A MISTRIAL BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL

After the State was permitted to reopen its case and present additional evidence, the defendant again moved for a judgment of acquittal. Upon the denial of this motion, his defense counsel moved for a mistrial based on ineffective assistance of counsel, claiming that defense counsel's behavior in raising the issue of insufficiency of the evidence at the close of the State's case in chief and thus bringing the deficiency to the State's attention was constitutionally deficient. The defendant argued before the Court of Appeals and in his petition for review that if the motion for judgment of acquittal had not been raised by defense counsel, there would have been no evidence presented to indicate that the charged crime was committed with a deadly weapon. The district court denied this motion, finding that its decision to allow the State to reopen its case was discretionary and that "the defendant has certainly had competent counsel in this matter."

Before reviewing the Court of Appeals' decision on this issue, two important points must be noted. First, defendant's allegation of ineffective assistance of counsel is based solely on counsel's action in moving for a judgment of acquittal at the close of the State's case. Second, the entire thrust of Murdock's allegation is based upon his belief that he would have been acquitted of the aggravated battery with a deadly weapon had his counsel not brought to the prosecutor's attention through a motion for judgment of acquittal that there was no evidence a deadly weapon was used by the defendant. This latter contention of the defendant has no basis in fact and is contrary to the evidence. Our previous discussion of the district court's treatment of the motion for judgment of acquittal demonstrates that there was sufficient evidence in the record for a rational factfinder to conclude beyond a reasonable doubt that

the defendant was guilty of either aggravated battery with a deadly weapon or aggravated battery done in a manner whereby great bodily harm could have been inflicted.

The Court of Appeals affirmed the district court's denial of Murdock's motion for a mistrial, explaining:

"Murdock argues that his counsel's decision to move for judgment of acquittal alerted the State to a fatal flaw in its case and gave it the opportunity to correct its error. Murdock seems to be arguing that any defense lawyer in a criminal case who moves for acquittal at the close of the State's case in chief automatically violates the first prong of the two-prong analysis [for ineffective assistance of counsel claims]. We reject this notion. The district court exercises its discretion in deciding whether to permit the State to reopen its case in chief. [Citation omitted.] The court very well could have refused to reopen the case. [Citation omitted.] Counsel had to make a strategic decision whether to defer the issue of the sufficiency of the State's evidence and go forward with a defense in the hope that no additional evidence arose to support the State's case or meet the issue head-on and raise the issue at the close of the State's case with the realistic expectation that the court was unlikely to permit the State to reopen its case to supply evidence it could have but failed to educe [*sic*]. Such strategic decisions are not the basis for an ineffective assistance of counsel claim. [Citation omitted.] The district court correctly denied this motion." *Murdock*, slip op. at 6.

### Standard of Review

An appellate court reviews a district court's refusal to declare a mistrial for an abuse of discretion. *State v. Minski*, 252 Kan. 806, 812, 850 P.2d 809 (1993). The latitude allowed a court in exercising judicial discretion varies depending on the character of the question presented for determination. Generally speaking, this court will not find that a district court abused its discretion if reasonable persons could differ as to the outcome of the district court's decision, as long as it was made within and took into account the applicable legal standards. *Miller* 284 Kan. at 689. Therefore, this court must determine whether the district court was correct in its underlying determination that Murdock's defense counsel had provided competent representation.

To demonstrate that his defense counsel failed to provide effective representation as contemplated by the Sixth Amendment to the United States Constitution, Murdock was required to establish (1) that counsel's performance was constitutionally deficient and

(2) that counsel's deficient performance was so serious as to deprive the petitioner of a fair trial. See *Bledsoe v. State*, 283 Kan. 81, Syl. ¶ 4, 150 P.3d 868 (2007); see also *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh. denied* 467 U.S. 1267 (1984); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985).

We generally refer to these requirements as the *Strickland* test, after the United States Supreme Court decision where they were first announced. As this court explained at length in *Bledsoe*:

"The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.]

"Once a defendant has established counsel's deficient performance, the defendant also must establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citation omitted.]" 283 Kan. at 90-91.

When considering a district court's determination regarding an allegation of ineffective assistance of counsel, an appellate court determines " 'whether the decision reached by the trial court follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have substantial support in the evidence.' " *Ferguson v. State*, 276 Kan. 428, 445, 78 P.3d 40 (2003) (quoting *State v. Orr*, 262 Kan. 312, 322, 940 P.2d 42 [1997]).

*Discussion and Analysis*

The district court in this case found that Murdock's defense counsel had provided competent representation. In other words, the district court found that Murdock had failed to establish the first prong under *Strickland* and its progeny—that counsel's performance was constitutionally defective. The Court of Appeals af-

firmed this determination, finding that counsel's action in moving for a judgment of acquittal in this case was a matter of trial strategy and did not constitute ineffective assistance of counsel.

This conclusion—that defense counsel's decision to move for judgment of acquittal at the close of the State's case did not constitute deficient performance—is correct. As both the district court and the Court of Appeals noted, a district court has considerable discretion in determining whether to allow a party to reopen its case to admit additional evidence. See *Braun*, 209 Kan. at 188-89. If defense counsel believed that the evidence at the original close of the State's case in chief was insufficient to support a conviction, then it was objectively reasonable to move for a judgment of acquittal at that time. This decision was a matter of trial strategy and did not constitute deficient performance. Thus, the district court correctly denied Murdock's motion for a mistrial.

We conclude that defendant's claim of ineffective assistance of counsel fails upon the first prong of the *Strickland* test, because defense counsel's representation did not fall below an objective standard of reasonableness, considering all the circumstances. We do not reach the second prong of *Strickland*, though we note that it would be difficult to establish a claim of prejudice given that there was sufficient evidence in the record at the original close of the State's case in chief for a rational jury to convict him of aggravated battery. Contrary to Murdock's argument on appeal, there is not a "reasonable probability that . . . the result of the proceeding would have been different" if his counsel had not moved for a judgment of acquittal at that time. *Bledsoe*, 283 Kan. at 90.

Because defense counsel's behavior in moving for a judgment of acquittal at the original close of the State's case in chief was not constitutionally deficient, the district court correctly denied his motion for a mistrial based on ineffective assistance of counsel. Accordingly, there is no abuse of judicial discretion.

(4) Court's Response to the Jury's Question During Deliberations

Murdock contends that the district court's response to a question asked by the jury during deliberations constituted an abuse of dis-

cretion. In particular, Murdock argues that the court's response went beyond the scope of the question asked and was provided without allowing the defendant an opportunity to provide input as to what an appropriate response to the question might be.

*Standard of Review*

K.S.A. 22-3420(3) governs a jury's request for additional information after deliberations have commenced. The statute provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

A district court's decision to respond to a jury's request for additional information during deliberations is reviewed for an abuse of discretion. *State v. Morris*, 255 Kan. 964, 986, 880 P.2d 1244 (1994). In *State v. Bandt*, 219 Kan. 816, 824, 549 P.2d 936 (1976), this court explained:

"A trial court is vested with a great amount of discretion in answering questions directed to him by a jury after the jury has begun its deliberations. The important consideration is that the jury be properly instructed on the essential issues presented at the trial and this is particularly true in a criminal proceeding where the question presented by the jury involves the basic elements of the criminal offense on which the defendant is being tried."

This court has also explained that a district court's decision to provide additional instruction to the jury when a question is submitted during deliberations will be upheld as long as "the instruction so given is not coercive or otherwise objectionable." *State v. Wilson*, 169 Kan. 659, 663, 220 P.2d 121 (1950). In other words, the court must determine whether "the rights of the defendant were in any way prejudiced by the action of the trial court in giving the instruction." 169 Kan. at 663. The *Wilson* court explained that "the real issue concerning the giving of this instruction is whether it was a correct statement of the law as applied to the facts brought out in the evidence." 169 Kan. at 663.

*Discussion and Analysis*

During deliberations, the jury submitted a question requesting clarification as to the difference between aggravated battery with a deadly weapon and aggravated battery in a manner whereby great bodily harm, disfigurement, or death can be inflicted. The district court consulted with the parties as to the question, and it was decided that the court should call the jury back into the courtroom in order to determine exactly what kind of information the jury was seeking.

When the parties and jury were in the courtroom, the district court asked the presiding juror, "Can you be a little more clear on what your concern is or help me out with your concern?" The presiding juror responded, "We just don't understand the language between the two of them [meaning the two types of aggravated battery]. What's the difference between the two?" At this point, the judge requested a copy of the jury instructions and provided the following lengthy response from the bench:

"In instruction No. 9 it states, 'The defendant is charged with the crime of aggravated battery. The defendant pleads not guilty. Then to establish this charge each of the following claims must be proved.' And then number one, that the defendant intentionally caused bodily harm to another with a deadly weapon.

"So you could look at the evidence and, for example, if you thought that the evidence showed that there had been brass knuckles used, you could consider whether or not those brass knuckles and the way they were used was a deadly weapon.

"And if your view was that a deadly weapon was used, that these were used in a manner that they were a deadly weapon by Mr. Murdock, then—and if all twelve of you agreed, then your verdict could be that the defendant is guilty of aggravated battery by use of a deadly weapon. Now, it's in the disjunctive, so that is one way the defendant could be found guilty. And then it says, 'Or in any manner whereby great bodily harm, disfigurement, or death can be inflicted.'

"And that could be from the evidence, for example, you could perhaps find that even without the use of brass knuckles that the way in which the blow was administered could have—could have resulted in great bodily harm, disfigurement or even death. Now I'm not suggesting that that's how you should look at the evidence at all. You have to consider all the evidence.

"But I think you just look at it; was there a deadly weapon used and—or then you look to see if this blow, if there was one, if you think there was one, you know, with or without the brass knuckles, was in a way that you could have—it could have resulted in great bodily harm, disfigurement, or death. And then if you can't

agree on either one of those; in other words, if twelve can't agree on one or the other under aggravated battery, then under the instructions you go to simple battery.

"And that, of course, says, 'If you do not agree that the defendant is guilty of aggravated battery, you should then consider the lesser offense of battery. To establish this charge, each of the following claims must be proved: Number one, that the defendant intentionally caused bodily harm to another person, and that it occurred on November 7th.'

"So in that case, of course, you're not concerned with whether or not a deadly weapon was used or whether it could have been—whether it was in—administered in a way that could have caused disfigurement or great bodily harm or even death. It's just whether or not there was any bodily contact or any bodily harm to the alleged victim. So the attorneys and I have discussed this, and we're just—that's about the best we can do right now.

"And so if you would please go back and continue your deliberations. And again, I want to emphasize that by giving those examples of how the jury could find one form of aggravated battery or another form, I'm not suggesting that should be your verdict at all. I'm simply setting that out there as a possibility in an effort to explain that it could be one or it could be the other.

"But if it is either of those, if it is either of those, all twelve of you are going to have to agree that it's this one or this one. If you agree on one, for example, then your work's over. But you work down through them. And if you find nether form of aggravated battery, nor simple battery, then of course, you must find [the] defendant not guilty, which under the evidence could be your verdict. So I regret that you're having this difficulty. But that's the best we can do right now. Thank you very much."

Neither the State nor defense counsel was given the chance to provide additional input regarding the presiding juror's request for clarification before the district court gave this off-the-cuff response. However, neither the State nor defense counsel objected to the court's explanation.

Murdock does not contend on appeal that the district court should not have responded to the jury's request for additional information or that the court's lengthy response to the jury's question in this case was a misstatement of the law to be applied. Rather, Murdock argues that the district court's instruction constituted an abuse of discretion for three reasons: (1) by providing the instruction without allowing defense counsel an opportunity to suggest possible responses or to object to the court's response; (2) by over-emphasizing the alternative ways that the jury could find the de-

fendant guilty in light of the evidence; and (3) by responding to the question in open court when the stated purpose for calling the jury into the courtroom was to request clarification on the jury's question. In essence, Murdock argues that the district court abused its discretion because its response prejudiced the jury against him.

This court has interpreted K.S.A. 22-3420(3) to require "that once the jury has begun deliberations, any questions from the jury concerning the law or evidence pertaining to the case must be answered in open court in the defendant's presence, unless the defendant is absent voluntarily. [Citation omitted.]" *State v. Bell,* 266 Kan. 896, 919, 975 P.2d 239, *cert. denied* 528 U.S. 905 (1999). Even though the statute does not require the court to give counsel and the accused the opportunity to suggest possible responses to the jury question, the Court of Appeals correctly notes that the "better practice [calls] for the trial court to solicit the advice and comments of counsel regarding a jury's question before formulating an answer." *Murdock,* slip op. at 8.

Due to the grave risk of misleading the jury and the real risk of reversal, a judge responding to a jury question should avoid extemporaneous discussions with a jury on questions submitted. The better practice is to confer on the record with counsel and the accused before responding to the jury's question. Counsel should be given the opportunity to provide input as to the final answer, preferably by way of written recommendations to the judge. Under such circumstances, the risk of misleading the jury or of committing reversible error in the answer given is greatly reduced, and the potential that the answer will help the jury in its deliberations is greatly increased.

Nevertheless, the crucial issue in reviewing a court's response to such a question is "whether it was a correct statement of the law as applied to the facts brought out in the evidence." *Wilson,* 169 Kan. at 663. In light of this standard, the only question raised by Murdock on appeal that implicates an abuse of the district court's broad discretion in responding to the jury's question is the assertion that the instruction overemphasized different ways that the jury could find the defendant guilty in light of the evidence. This court explained in *Bell* that an instruction, even if erroneous, might be

found harmless if it does not place any "undue emphasis on either" guilt or innocence. 266 Kan. at 920. Murdock argues that because the court's response emphasized the ways the defendant could be found guilty, it cannot be considered harmless.

The district court's response to the jury question in this case went far beyond what was necessary to explain the clarification between the two types of aggravated battery in question. The district court in this case engaged in a very risky venture by discussing with the jury critical elements of the offense charged without the benefit of notes and without the benefit of input from the parties. Nevertheless, the response was a correct statement of the law. Moreover, although the court's response did use evidence in the record for examples illustrating the different types of aggravated battery, it did state that the court was "not suggesting" that the defendant was guilty of any of the crimes charged and that the jury must "consider all the evidence." At the end of the judge's response, he again stated:

"I want to emphasize that by giving those examples of how the jury could find one form of aggravated battery or another form, I'm not suggesting that should be your verdict at all. I'm just simply setting that out there as a possibility in an effort to explain that it could be one or it could be the other."

The district court's response to the jury question was not an incorrect statement of the law as applied to the facts brought out in the evidence. After reviewing the district court's response in its entirety, we conclude that the answer given does not overemphasize either Murdock's guilt or his innocence. Instead, the response was a genuine attempt by the district court—albeit a risky one—to explain the elements of the offense in response to the jury question. Thus, we conclude that the court's response did not constitute an abuse of discretion.

As a final note, Murdock did not object to the district court's response to the jury's question at any time during that response or even after the response was concluded. This court ordinarily views jury instructions under a clearly erroneous standard where no objection was raised at the time the instruction was given. See *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006). " 'Instruc-

tions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citations omitted.]" *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006). In our opinion there is no real possibility the jury would have rendered a different verdict if the response had not been given.

The decisions of the district court and Court of Appeals are affirmed.

BEIER, J., concurring in part: I write separately only to clarify the route by which I arrive at my fellow justices' conclusion that defendant gets no reversal on the first or second issues raised in his petition for review.

In essence, the defense argues that the district judge ultimately believed that he permitted the State to reopen its case to put on evidence of an element of the crime it had failed to prove before the motion for judgment of acquittal, and that this decision was reversible error. In fact, no matter what the judge may have believed he was doing, the record demonstrates that he did not allow the improper introduction of evidence on an element about which the State had been silent during its case in chief.

The district judge properly denied the defense motion for judgment of acquittal in the first instance. As the majority observes, the evidence already introduced that defendant had used brass knuckles when he struck the victim was circumstantial, but it was entirely adequate to support a rational factfinder's guilty verdict.

This means there was no need to reopen the State's case for additional evidence, whether we review that decision de novo as a matter of law or deferentially for abuse of discretion. It also means that no legal prejudice resulted from either (a) the district judge allowing the State to reopen its case to call a witness to testify to something already in evidence, or (b) defense counsel's motion calling the prosecution's or the court's attention to a nonexistent failure of the State's proof in its case in chief.

In short, there was no real problem to solve. The parties' and the district court's reactions to an imagined problem did not hurt defendant's case.