No. 92,488

STATE OF KANSAS, *Appellee,* v. SAM COOPERWOOD, II, *Appellant.*

147 P.3d 125

Opinion filed December 8, 2006.

*Korey A. Kaul,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Michael A. Russell,* chief deputy district attorney, argued the cause, and *Jerome A. Gorman,* district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: Sam Cooperwood, II, was convicted by a jury of attempted voluntary manslaughter for stabbing Belinda Dorsey in the chest with a steak knife. The Court of Appeals affirmed in *State v. Cooperwood,* No. 92,488, unpublished opinion filed January 20, 2006. This court granted his petition for review under K.S.A. 20-3018(b).

The issues on appeal, and this court's accompanying holdings, are as follows:

1. Did the trial court deny Cooperwood his right to a fair trial by refusing his request to call an expert witness to testify regarding the ineffectiveness of Dorsey's medications? No.
2. Did the trial court clearly err in failing to instruct the jury on the State's continuing burden of proof as described in PIK Crim. 3d 52.08 (affirmative defenses)? No.

Accordingly, we affirm.

## FACTS

On November 16, 2002, shortly after 1 a.m., Sam Cooperwood, II, went to the house of Belinda Dorsey, whom he had been dating. After an argument, he stabbed her. He was eventually charged with attempted first-degree murder.

According to Dorsey's testimony at the jury trial in July 2003, she was taking Effexor and Seroquel for depression and hallucinations in November 2002. Without the medication, she would see little black, green, and orange men. Sometimes the little men upset Dorsey by dancing. When she was off of her medication, she would see the little orange man the most. Although she testified that the little orange man did not like Cooperwood, the orange man did not give her instructions to hurt Cooperwood. Dorsey did not see the orange man on the night of the incident.

Dorsey also testified that she took her medication and went to bed around 9 or 10 that night. She woke up around 1:30 a.m., when Cooperwood knocked on her door and asked for a cup of water.

According to Dorsey, after she got Cooperwood a cup of water, she sat down in a chair in the front room. He accused Dorsey of

having sex with his cousin. When she denied the accusation, he brought up her ex-boyfriend, Lawrence Garner. Dorsey testified that Cooperwood believed she wanted Garner back. The two argued because Cooperwood wanted a sexual relationship, but Dorsey did not. During the argument, Dorsey rested her head in her hands because she was tired.

Dorsey further testified that during the argument, she saw Cooperwood go into the kitchen. She began dozing off and then felt a burning sensation in her chest. Dorsey heard Cooperwood say "I asked you a question." Dorsey said that she did not hear the question. When she attempted to stand up, Cooperwood pushed her back down and told her that if she did not want him, then she would not have anyone else. As Cooperwood again went into the kitchen, Dorsey ran upstairs. She denied experiencing any hallucinations.

By contrast, according to Cooperwood's testimony, he acted in self-defense. When he arrived at Dorsey's, she stated that the little orange man told her that Cooperwood loved his child's mother instead of Dorsey. After arguing for a few minutes, Dorsey and Cooperwood went into the kitchen. She then grabbed a butcher knife and stated, "You don't love me anymore." Cooperwood testified that only when she came at him with the butcher knife did he pick up a steak knife lying on the counter and stab her in the chest. Dorsey then dropped the butcher knife in front of the stove.

According to Cooperwood, he did not realize he had stabbed Dorsey; rather, he thought the knife got stuck in her clothing. After he struck her with the knife, he pushed her down in a chair and stated, "Look what you made me do." Cooperwood then left and flagged down a vehicle driven by Master Sergeant John Franz of the Kansas City Police Department on a street near Dorsey's home. When Franz stopped, Cooperwood stated that he had "stabbed that girl down on Second Street."

After the court denied Cooperwood's motion for directed verdict at the close of the State's case, it heard argument on evidence he desired to introduce. Among other things, this included testimony by Dr. William Logan, a psychiatrist appointed by the court to assist the defense after Dorsey had been declared competent to testify

at trial by a psychologist. Dr. Logan was prepared to opine that Dorsey's prescribed medications were ineffective. The court excluded the evidence.

Following this ruling and before Cooperwood's testimony, other defense testimony came from Dr. Michael Miranda of Wyandotte County Mental Health Center. He had performed a psychiatric evaluation of Dorsey on August 15, 2002—approximately 3 months before the stabbing incident. Dr. Miranda testified that during his evaluation, Dorsey was "very anxious," acknowledged that voices told her to hurt herself, and stated that little green men were walking around the office. Based on Dorsey's actions, Dr. Miranda believed that Dorsey was afraid of the little green men. According to him, Dorsey did not become aggressive during the interview. He did not testify about Dorsey's medication or treatment.

Other defense testimony came from Ludie Sutton, a case manager with the Wyandotte Center. She started as Dorsey's case manager in October 2002—1 month before the stabbing incident. Among other things, Sutton helped Dorsey keep her doctor's appointments so that Dorsey could receive her medication.

Sutton also kept track of Dorsey in written "progress notes." Based on her notes, Sutton testified that by November 5, 2002, Dorsey had missed a total of four doctor's appointments. Based on her November 13, 2002, appointment with Dorsey, Sutton opined that Dorsey was out of medication because her 2-week supply provided on October 21 would have run out and because Dorsey had not kept her medical appointments where she could have obtained refills. While Sutton opined that Dorsey was out of medication, she did not personally observe this. Her progress notes were admitted into evidence.

The jury convicted Cooperwood of attempted voluntary manslaughter.

## ANALYSIS

Issue 1: *The trial court did not deny Cooperwood his right to a fair trial by refusing his request to call an expert witness to testify regarding the ineffectiveness of Dorsey's medications.*

Cooperwood argues that the trial court's refusal to allow Dr. Logan to testify that Dorsey's medications were ineffective denied him his constitutional right to a fair trial because this testimony was integral to his defense. See, *e.g., State v. White,* 279 Kan. 326, 331, 109 P.3d 1199 (2005) (" 'under the state and . . . federal Constitutions a defendant is entitled to present the theory of his or her defense and the exclusion of evidence that is an integral part of that theory violates a defendant's fundamental right to a fair trial' "). Specifically, he claims that Dr. Logan's opinion would have resolved the critical swearing contest as to which party was the aggressor by corroborating Cooperwood's testimony that Dorsey attacked him.

Cooperwood further argues that because the error denied him his right to a fair trial, it must be measured against the federal constitutional standard of harmless error contained in *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), *i.e.,* harmless beyond a reasonable doubt.

The State responds that the admissibility of expert testimony lies within the sound discretion of the trial court and its determination will not be reversed absent an abuse of discretion, citing *State v. Brice,* 276 Kan. 758, 775, 80 P.3d 1113 (2003). It further asserts that before expert testimony is admissible at trial, the proponent must establish, among other things, that the testimony will be helpful to the jury. Citing *State v. McIntosh,* 274 Kan. 939, 956, 58 P.3d 716 (2002), it concludes: "Therefore, the information that the expert witness is testifying about must not be within the normal experiences and qualifications of a lay person." The State reasons that Dr. Logan's testimony was properly excluded because it would not have assisted the jury.

We agree that our standard of review is abuse of discretion. See, *e.g., State v. Brice,* 276 Kan. 758. The considerations for a de novo review that were present in *State v. White,* 279 Kan. 326, *e.g.,* interpretation of statutory language, are not present in the instant case.

Defense counsel announced at the outset of his argument to the trial court that Dr. Logan would be called for his interpretation of some of the medical records which he had reviewed. According to

the later proffer, Dr. Logan would specifically opine that the medications did not eliminate or even control Dorsey's hallucinations:

"Dr. Logan will testify that within a reasonable degree of medical certainty that the medication that she was receiving wasn't an appropriate dosage. That even . . . in the times when they can establish she was medically compliant, that the dosages were not enough. It wasn't controlling her signs and symptoms. She continued to have auditory and visual hallucinations even while she was still taking the medication."

The State objected to Logan's proposed testimony by repeatedly noting that he had never examined her and was relying completely upon his review of "records" and "reports."

As a precursor to its ruling, the trial court stated its concern about Dr. Logan's proffered testimony:

"Well, first of all, I don't think that that's relevant to the issues of this particular case, whether—I don't know exactly how he could make that determination. But at any rate, I don't think it's relevant to this particular case. Some other doctor would come in—we'd go on forever. They'd say—obviously, they're going to say that was the right medication because they prescribed it. So they'd disagree with Dr. Logan."

Defense counsel responded that it was "clear from the record" that Dorsey was exhibiting signs and symptoms and "[t]hat's how Dr. Logan would testify that the medication that she was taking was not effective." The court then excluded Dr. Logan's testimony.

The Court of Appeals agreed with Cooperwood that the trial court erred in holding that Dr. Logan's proffered testimony was not relevant. It concluded that the effect of medication on Dorsey's mental state at the time of the incident was a material issue and central to Cooperwood's theory of self-defense. *State v. Cooperwood*, No. 92,488, unpublished opinion filed January 20, 2006, slip op. at 5-6. Nevertheless, it held that the testimony's exclusion was harmless error under K.S.A. 60-261 because there was no credible testimony that the hallucinations caused Dorsey to be violent, and Dorsey's mental problems were well documented at trial. Slip op. at 6.

We agree that Logan's proffered testimony was relevant, our threshold consideration on the admissibility of evidence. See *State v. Torres*, 280 Kan. 309, 327, 121 P.3d 429 (2005). See K.S.A. 60-

401(b) (relevant evidence is "evidence having any tendency in reason to prove any material fact"). Dr. Logan's opinion would help resolve the swearing contest between Cooperwood and Dorsey by corroborating Cooperwood's testimony that she attacked him, *i.e.*, (1) her hallucinatory orange man did not like Cooperwood; (2) the night of the stabbing her orange man said Cooperwood loved his child's mother and, by implication, not Dorsey; and (3) she said she did not think he loved her anymore as she grabbed a butcher knife.

We do not agree with Cooperwood and the Court of Appeals, however, that this relevant evidence was wrongfully excluded. Certainly, otherwise relevant evidence may be excluded for a variety of reasons. See *State v. Marsh*, 278 Kan. 520, 530, 102 P.3d 445 (2004) (general rule is that, unless otherwise prohibited by statute, constitutional prohibition, or court decision, all relevant evidence is admissible). See K.S.A. 60-407(f). We therefore need not perform a harmless error analysis under *Chapman v. California*, which is the proper standard for measuring Cooperwood's allegations of violation of his federal constitutional right to a fair trial. As more fully discussed below, we conclude Dr. Logan's testimony simply was unnecessary to the jury's decision.

This court has often held that necessity, *e.g.*, helpfulness to the jury, is one important basis for the admissibility of expert witness testimony. As we stated in *Simon v. Simon*, 260 Kan. 731, 735, 924 P.2d 1255 (1996):

" ' "Expert opinion testimony is admissible if it will be of special help to the jury on technical subjects [with] which the jury is not familiar or if such testimony [will] assist the jury in arriving at a reasonable factual conclusion from the evidence." *Sterba v. Jay*, 249 Kan. 270, 816 P.2d 379 (1991); *Falls v. Scott*, 249 Kan. 54, 63, 815 P.2d 379 (1991). "The basis for the admission of expert testimony is *necessity*, arising out of the particular circumstances of the case." *Falls*, 249 Kan. at 63. (Emphasis added.) "[If] the normal experience and qualifications of jurors permit them to draw proper conclusions from [the] given facts and circumstances, expert conclusions or opinions are not necessary." *Sterba*, 249 Kan. at 282-83; *Falls*, 249 Kan. at 63. Obviously, the trial court has considerable discretion in determining whether to permit expert testimony.' " (Quoting *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, 626, 822 P.2d 591 [1991]).

Indeed, in both criminal and civil cases, this court has appeared to state the standard in even stronger terms: "Expert conclusions

or opinions *are inadmissible* where the normal experiences and qualifications of lay persons serving as jurors permit them to draw proper conclusions from given facts and circumstances." (Emphasis added.) *Pullen v. West*, 278 Kan. 183, 207, 92 P.3d 584 (2004); *State v. McIntosh*, 274 Kan. 939, 956, 58 P.3d 716 (2002); see *State v. Papen*, 274 Kan. 149, 50 P.3d 37 (2002); *State v. Colwell*, 246 Kan. 382, 389, 790 P.2d 430 (1990); *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423 (1978); *Massoni v. State Highway Commission*, 214 Kan. 844, 522 P.2d 973 (1974).

These facially different standards were reconciled in *Lollis* 28 years ago. Among other things, we observed from our case law that the basis for the admission of expert opinion testimony was said to be necessity, and that where the normal experience and qualifications of laymen jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions to be drawn from the facts and circumstances are inadmissible. See 224 Kan. at 260-61. The *Lollis* court concluded: "It is obvious that these observations simply state, in a different way, that the basis for the admission of expert testimony is necessity, arising out of the particular circumstances of the case." 224 Kan. at 261.

Regardless of how this particular standard has been stated, we conclude there was no error in excluding Dr. Logan's testimony. It was not a jury necessity for a psychiatrist who had only reviewed Dorsey's "records" and "reports" to testify that her medications were ineffective. The record on appeal reveals no reason why the defense could not have argued to the jury that it should conclude from the testimony and documents, *e.g.*, progress notes, that Dorsey's medications were ineffective.

Similarly, in *State v. Papen*, 274 Kan. 149, this court upheld the trial court determination that there was no need for the defense expert psychologist to testify that defendant and victim had been in a psychologically and physically unfulfilled relationship. It reasoned that the jurors could have concluded this for themselves from defendant's testimony. Accordingly, this court held there were no violations of defendant's federal constitutional rights. 274 Kan. at 157; see *State v. Evans*, 275 Kan. 95, 102, 62 P.3d 220

(2003) (The right to present a defense is subject to statutory rules and case law interpretation of rules of evidence.).

Based upon the same rationale, in *People v. Hulitt*, 361 Ill. App. 3d 634, 638, 838 N.E.2d 148 (2005), the court held that there was no need for the defense expert psychologist to testify that as a result of postpartum depression, defendant lacked the ability to cope with the stress of parenting three children and she was unable to appreciate the danger of her actions toward her daughter on the night of the murder:

"Defendant was in pain from the recent [son's] delivery, was taking pain medication and was often alone with the children while the other adults went to work or to look for a job or an apartment. *It does not require an expert to explain that defendant may have been depressed and had trouble coping with three children. It does not require an expert to explain that defendant was . . . 'desperate in tragic circumstances' and unable to take care of one child, let alone three*." (Emphasis added.) 361 Ill. App. 3d at 638.

We acknowledge that "lack of necessity" was not a given basis for the trial court to exclude Dr. Logan's testimony. Nevertheless, the exclusion can be upheld under the rationale and holding of *State v. Bryant*, 272 Kan. 1204, 1210, 38 P.3d 661 (2002): "[T]he trial court will not be reversed if it is right, albeit for the wrong reason."

Issue 2: *The trial court did not clearly err in failing to instruct the jury on the State's continuing burden of proof as described in PIK Crim. 3d 52.08 (affirmative defense).*

Next, Cooperwood argues that the trial court erred in failing to give PIK Crim. 3d 52.08 regarding affirmative defenses and the state's continuing burden of proof. The court did instruct the jury on Cooperwood's theory of self-defense via PIK Crim. 3d 54.17. Cooperwood's argument, however, hinges on language from that instruction's Notes on Use, which states: "If this instruction is given, PIK 3d 52.08, Affirmative Defenses—Burden of Proof, *should* be given." (Emphasis added.) PIK Crim. 3d 52.08 states:

"The defendant raises [self-defense] as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The *State's burden of proof does not shift to the defendant*." (Emphasis added.)

Although the trial court did not give PIK Crim. 3d 52.08, it informed the jury of the State's general burden of proof via PIK Crim. 3d 52.02:

"*The State has the burden to prove the defendant is guilty.* The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

Cooperwood did not request PIK Crim. 3d 52.08, nor did he object to the trial court's failure to give it. Therefore, this court must determine whether the failure to give the instruction was "clearly erroneous." K.S.A. 2005 Supp. 22-3414(3). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citation omitted.]" *State v. Lowe*, 276 Kan. 957, 963-64, 80 P.3d 1156 (2003).

We previously addressed this issue in *State v. Crabtree*, 248 Kan. 33, 805 P.2d 1 (1991). There, the trial court gave a self-defense instruction from PIK Crim. 2d 54.17 and the basic instruction on burden of proof—PIK Crim. 2d 52.02. Crabtree, however, argued that the court's failure to give PIK Crim. 2d 52.08, as instructed in the Notes on Use for PIK Crim. 2d 54.17, was clear error.

The *Crabtree* court determined that when the jury instructions were read as a whole, the trial court's failure to instruct the jury with PIK Crim. 2d 52.08 was not clearly erroneous. In so concluding, this court discussed PIK Crim. 2d 52.02: "Although PIK Crim. 2d 52.02 does not specifically address the burden of proof when an affirmative defense is asserted, it does state the general rule that the State has the burden; the defendant never has to prove himself not guilty." 248 Kan. at 40. Further, this court noted that only a "bare scintilla of evidence" justified the self-defense instruction. 248 Kan. at 40.

Cooperwood attempts to distinguish the rationale of *Crabtree* by stating that in the present case, more evidence justified the self-

defense instruction: "Here, there was far more than a scintilla of evidence. In essence it was a credibility contest between Mr. Cooperwood's version of the facts and Ms. Dorsey's version of the facts."

The Court of Appeals in the instant case noted that a similar argument was rejected by this court in *State v. Sperry*, 267 Kan. 287, 294, 978 P.2d 933 (1999), where we stated:

"Defendant's appellate counsel acknowledges that the court considered this issue in *State v. Crabtree*, 248 Kan. 33, 805 P.2d 1 (1991), and concluded that failure to give the instruction was not clearly erroneous. He would have the court distinguish the present case as having more evidence justifying a self-defense instruction. We decline to do so. The heart of the court's reasoning in *Crabtree* was that, considered together and as a whole, the instructions that were given adequately guided the jury's consideration of the self-defense theory. There, as here, the jury was instructed on the presumption of innocence and the State's burden of proving defendant guilty beyond a reasonable doubt. Thus, the court concluded that the jury was instructed on the substance of PIK Crim. 3d 52.08. [Citation omitted.]"

Under the rationale of both *Crabtree* and *Sperry*, the trial court's failure to instruct the jury with PIK Crim. 3d 52.08 was not clearly erroneous.

We acknowledge that under similar facts, *i.e.*, no instruction requested and no objection to the failure to instruct, this court in *State v. Osbey*, 238 Kan. 280, 286, 710 P.2d 676 (1985), stated there simply was no error at all:

"The fact that the court failed to use PIK Crim. 2d 52.08 will not be considered error when there were other instructions which made it clear that the burden of proof was on the State. Error cannot be predicated on the refusal to give specific instructions where those which were given cover and include the substance of those refused."

In *Crabtree*, we stated that "[o]bviously, the trial court should have given PIK Crim. 2d 52.08. PIK Crim. 2d 52.08 should be given whenever an affirmative defense is asserted in a criminal case." 248 Kan. at 40. We also observe that the Notes for Use state that the instruction "should be given." Accordingly, we agree that failure to do so is error. When considered in a case such as ours, *Crabtree*, and *Sperry*, *i.e.*, no instruction requested and no objection to the failure to instruct, we conclude the proper standard of review is "clearly erroneous."

The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.

LUCKERT, J., not participating.

LOCKETT, J., Retired, assigned.