NOT DESIGNATED FOR PUBLICATION

No. 111,009

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KRISTINA M. ARB,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed September 11, 2015. Reversed and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Meghan K. Morgan*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., HILL and ATCHESON, JJ.

*Per Curiam*: A jury sitting in Lyon County District Court convicted Defendant Kristina Arb of distribution of oxycodone for selling some of her prescription medication to a law enforcement operative. She has appealed based on multiple problems with the instructions to the jury related to her defense of entrapment. We find that the combined impact of two of the asserted deficiencies deprived her of a fair trial. We, therefore, reverse the conviction and remand for a new trial.

1

In May 2011, a confidential informant working with a Lyon County Sheriff's Department detective suggested he could buy prescription pain pills from Arb. The informant had known Arb for years. Until then, the detective had not been investigating Arb and had no particular reason to suspect her of drug trafficking. The detective had the informant set up what they intended to be a controlled purchase of Percocet from Arb. Percocet is a prescription painkiller combining oxycodone, a controlled narcotic, with acetaminophen. The undisputed evidence at trial indicated Arb had legitimate prescriptions for Percocet and other medications.

Law enforcement officers outfitted the informant with a body microphone, searched him to make sure he had no drugs or other contraband, and gave him money to buy Percocet from Arb. They watched as the informant entered a home where he and Arb agreed to meet, and they listened as the transaction unfolded. The officers then tracked the informant as he left the home and returned to their location. The informant turned over 20 pills and some unused buy money. The pills contained oxycodone.

About 6 months later, the Lyon County Attorney's Office charged Arb with one count of unlawfully distributing oxycodone, then a severity level 3 drug felony violating K.S.A. 2010 Supp. 21-36a05(a)(1). The jury heard the case in a 2-day trial in mid-February 2012. The detective, another law enforcement officer, the informant, Arb, and several other witnesses testified.

Arb told the jurors the informant had contacted her a number of times about buying her Percocet, and she had repeatedly refused until the preceding May, when she needed the money to settle a payday loan she had taken out. On the recording of the controlled purchase, Arb can be heard telling the informant, "I don't sell my pills." But the informant testified he bought prescription painkillers from Arb in 2010. Arb and the informant offered conflicting testimony as to which of them set the price for the Percocet at the start of the controlled purchase. The recording isn't entirely clear on that point.

The district court instructed the jury on entrapment as an affirmative defense to the charge. We discuss the instructions in analyzing Arb's points on appeal. The jury convicted Arb as charged. The district court later sentenced her to 30 months in prison, a downward departure from the presumptive guidelines range, and imposed postrelease supervision for 24 months. Arb has appealed.

Arb raises three issues on appeal, all dealing with the jury instructions and her entrapment defense. Entrapment is an affirmative defense to a criminal charge. *State v. Rogers*, 234 Kan. 629, 630-31, 675 P.2d 71 (1984); see *State v. Chavez*, No. 108,955, 2014 WL 1795760, at *2 (Kan. App. 2014) (unpublished opinion) (noting entrapment to be affirmative defense), *rev. denied* ___ Kan. ___ (April 28, 2015). If the evidence bearing on an affirmative defense causes a jury to have a reasonable doubt about the defendant's guilt, the defendant should be acquitted. See *State v. Johnson*, 258 Kan. 61, 66, 899 P.2d 1050 (1995) (self-defense); *Chavez*, 2014 WL 1795760, at *2 (entrapment).

At the time of Arb's offense, K.S.A. 21-3210 codified entrapment as a defense when the defendant's "criminal conduct was induced or solicited by a public officer or his agent for purposes of obtaining evidence to prosecute" the defendant. The defense has since been recodified without material change in K.S.A. 2014 Supp. 21-5208. The district court gave the following jury instruction on entrapment:

> "Entrapment is a defense if the defendant is persuaded to commit a crime which the defendant had no previous disposition to commit. It is not a defense if the defendant conceived the plan to commit the crime or when she had shown a predisposition for committing the crime and was merely afforded the opportunity to carry out her intention to complete the crime and was assisted by law enforcement officers. The defendant cannot rely on the defense of entrapment if you find that in the course of the defendant's usual activities, the sale of Oxycodone was likely to occur and that law enforcement officer or his agent did not mislead the defendant into believing her conduct to be lawful.

> "The person's previous disposition or intention to commit a crime may be shown by evidence of the circumstances at the time of the sale . . . setting of the price of the Oxycodone by the defendant, solicitation by the defendant to make her sale, prior sales of the defendant, or ease of access of the Oxycodone by the defendant."

The instruction parallels PIK Crim. 3d 54.14. The district court, however, did not give an instruction comparable to PIK Crim. 3d 52.08 or PIK Crim. 4th 51.050 informing the jury how to integrate evidence on an affirmative defense into its consideration of guilt in light of the State's burden of proof. Either of those identical pattern instructions would have educated the jury this way:

> "The defendant raises [entrapment] as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant." PIK Crim. 3d 52.08; PIK Crim. 4th 51.050.

On appeal, Arb first says the entrapment instruction given the jury was prejudicial because it used the word "persuaded" in the first sentence in place of "solicited," the actual statutory term. She next faults the instruction for including "ease of access" as a factor the jury should consider in weighing whether a defendant has a disposition to commit a drug crime when the offense involves medication for which he or she has a valid prescription. Finally, she argues the district court's failure to include either PIK Crim. 3d 52.08 or PIK Crim. 4th 51.050 in the instruction left the jury adrift in assessing the evidence of entrapment against the State's obligation to prove her guilty beyond a reasonable doubt. We take those points in order and consider Arb's additional argument for reversal based on cumulative error.

In *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012), the Kansas Supreme Court outlined the analytical steps an appellate court should take in assessing a

challenge to jury instructions in a criminal case: (1) reviewability considering preservation of the issue at trial and jurisdiction; (2) legal appropriateness of the instruction; (3) factual support in the evidence for the instruction; and (4) harmlessness of any actual error. See *State v. Brown*, 300 Kan. 542, 554-55, 331 P.3d 781 (2014). The lawyer representing Arb at trial made no objections to the instructions raising any of the points she now asserts. In the absence of a trial objection, we consider whether the omission of an otherwise legally and factually appropriate instruction or the giving of an otherwise inappropriate instruction prompted a "clearly erroneous" verdict. 300 Kan. at 555; *State v. Williams*, 295 Kan. 506, Syl. ¶ 5, 286 P.3d 195 (2012). To reverse, we must be "firmly convinced that the jury would have reached a different verdict" had the instructions been free of the error. *Williams*, 295 Kan. 506, Syl. ¶ 5; see *Brown*, 300 Kan. at 555.

As to Arb's first point, we fail to see a substantive problem with the entrapment instruction because it substituted "persuade" for "solicit," thus deviating from the literal language of the entrapment statute. The common definition of "solicit" includes several related meanings: to "entreat"; "to approach with a request or plea"; "to urge . . . strongly"; and "to try to obtain by usu[ally] urgent requests or pleas." Merriam-Webster's Collegiate Dictionary 1187 (11th ed. 2003). As Arb points out, "solicit" is defined in the Kansas Criminal Code as meaning to "command, authorize, urge, incite, request or advise another to commit a crime." K.S.A. 2014 Supp. 21-5111(cc). In both the statutory and dictionary definitions, the word "solicit" carries a sense of something more than a passing or casual expression and suggests urgency coupled with a direct or forceful appeal. That connotation extends to the statutory grounds for entrapment to the extent the defense fails when a government agent "merely afford[s] an opportunity or facility for committing the crime." K.S.A. 2014 Supp. 21-5208(a).

The criminal code does not define "persuade." By common definition, "persuade" means "to move by argument, entreaty, or expostulation to a belief, position, or course of

5

action" or "to plead with." Merriam-Webster's Collegiate Dictionary 925 (11th ed. 2003); see also The American Heritage Dictionary of the English Language 1318 (5th ed. 2011) (definition of "persuade" includes "[t]o cause . . . to undertake a course of action by means of argument, reasoning, or entreaty"). A linguist might find a subtle shade of meaning distinguishing "solicit" from "persuade." But from our vantage point, any distinction would be, at best, nominal. The words look to be functionally synonymous, so we find no instructional error on that score.

For her next point, Arb argues the district court erroneously included ease of access in the jury instruction as a factor weighing against entrapment and in favor of a criminal predisposition. We take a step back to gain some perspective. Entrapment, as a defense to a criminal charge, rests on the policy notion that government entities and their agents should not foment unlawful conduct. See *Jacobson v. United States*, 503 U.S. 540, 553-54, 112 S. Ct. 1535, 118 L. Ed. 2d 174 (1992). So if a government agent induces a person not otherwise disposed toward criminal behavior to break the law, the ostensible lawbreaker should not be held to answer for the wrongful act. The defense, however, does not apply when the agent merely affords an opportunity to someone already inclined to criminality. See K.S.A. 2014 Supp. 21-5208(a); *State v. Jones*, 271 Kan. 201, 204, 21 P.3d 569 (2001) (discussing circumstances supporting entrapment defense); *State v. Jordan*, 220 Kan. 110, 116, 551 P.2d 773 (1976) (same).

The last paragraph of PIK Crim. 3d 54.14 outlines factors the jury may consider in separating the impermissibly entrapped defendant from the criminally minded opportunist. In this case, the district court included Arb's "ease of access" to the oxycodone. But the factor is legally and factually inapposite in a drug trafficking case when the defendant has a lawful prescription for the drug.

The problem may be better illustrated in considering when ease of access does cut against an entrapment defense. Consider the government agent attempting to make a

6

controlled buy of cocaine or some other illegal drug. If the targeted individual already has the cocaine, that demonstrates unlawful conduct in possessing the drug at all and suggests a predisposition to traffic. After all, the target had to acquire the cocaine in the first place. Similarly, if the target disclaims present possession of cocaine but touts knowledge of how to readily get some, that suggests past conduct indicative of a disposition to trade in the drug. So those circumstances would tend to cloud a defense of entrapment.

But the same inferences cannot be logically or legally drawn from a target's possession of oxycodone obtained with a valid prescription. There is nothing unlawful about filling a valid prescription at a pharmacy. So ease of access in that circumstance is not indicative of a predisposition to engage in illegal drug trafficking. The district court, therefore, erred by instructing the jury otherwise. In this case, the pattern jury instruction should have been tailored to remove that factor. Although district courts should avoid gratuitous rewrites of pattern jury instructions, those instructions can and should be edited to reflect legal principles appropriate to the evidence in a given case. See *State v. Burton*, 35 Kan. App. 2d 876, 879-80, 136 P.3d 945, *rev. denied* 282 Kan. 792 (2006).

Because Arb's trial lawyer did not object to the entrapment instruction, we must consider whether the deficiency caused clear error. We defer the analysis of prejudice until we take up Arb's third point and consider her assertion of cumulative error.

For that point, Arb contends the district court's failure to give an appropriate instruction on consideration of an affirmative defense in light of the State's burden of proof amounts to error. We agree. The Kansas Supreme Court has held that the omission of PIK Crim. 3d 52.08 or its equivalent creates error when a criminal defendant presents a colorable affirmative defense. *State v. Cooperwood*, 282 Kan. 572, 582, 147 P.3d 125 (2006). But the court has recognized the instruction's omission is not clearly erroneous. 282 Kan. at 580-82; *State v. Crabtree*, 248 Kan. 33, 40-41, 805 P.2d 1 (1991). As we have mentioned, Arb's trial lawyer neither requested PIK Crim. 3d 52.08 nor objected to

7

its absence. Standing alone, then, this error could not amount to clear error requiring reversal of Arb's conviction.

Arb has also argued the cumulative effect of the instructional errors deprived her of a fair trial. Appellate courts will weigh the collective impact of trial errors and may grant relief if the overall result deprives the defendant of a fair hearing even though the errors considered individually might be considered harmless. *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). Here, we consider the two defects in the jury instructions regarding Arb's entrapment defense and ask whether they have, in combination, created clear error.

We outline the measure for clear error. In 2012, the Kansas Supreme Court recast the language for assessing whether jury instructions to which no objection has been lodged are sufficiently prejudicial to require reversal of convictions. *State v. Williams*, 295 Kan. 506, Syl. ¶ 5, 286 P.3d 195 (2012). In *Williams*, the court explained that the test had been stated as requiring the appellate court to "'reach[] a firm conviction'" that had a proper instruction been given "'there was a real possibility the jury would have returned a different verdict.'" 295 Kan. at 514 (quoting *State v. Stafford*, 223 Kan. 62, 65, 573 P.2d 970 [1977]). The *Williams* court then rephrased the test as "whether [the appellate court] is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *Williams*, 295 Kan. 506, Syl. ¶ 5. The court submitted that the rephrased test did not substantively differ from what had been applied for more than 30 years following *Stafford*. See *Williams*, 295 Kan. at 516. The court has since reiterated that view. In *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013), the court stated it failed to see "a practical difference" between the pre-*Williams* statement of the test and the *Williams* language, so the rephrasing simply crystallized the long-standing meaning. See *State v. Mireles*, 297 Kan. 339, 363, 301 P.3d 677 (2013) (citing and applying *Williams*); *State v. Rochelle*, 297 Kan. 32, 43-44, 298 P.3d 293 (2013) (citing and applying *Trujillo*).

For purposes of deciding this case, we embrace the Kansas Supreme Court's characterization of the changed phrasing of the test as cosmetic rather than substantive, although the revised language could be read otherwise. See *State v. Berney*, ___ Kan. App. 2d ___, 353 P.3d 1165, 1173-74 (2015) (Leben, J., concurring) (rephrased test of *Williams* might suggest heightened burden on defendant but relying on court's representation that no substantive change intended); *State v. Adams*, No. 106,935, 2013 WL 4046396, at \*13 (Kan. App. 2013) (unpublished opinion) (Atcheson, J., dissenting) (restatement of test in *Williams* "seems to ratchet up the defendant's burden in showing a jury instruction to be clearly erroneous"), *rev. denied* 299 Kan. 1270 (2014).

To grant Arb relief, we must be firmly convinced the jurors would have reached a different verdict had they been properly instructed on entrapment, meaning there was a real possibility of another outcome.

We comfortably conclude Arb has cleared that bar. There was considerable evidence supporting the entrapment defense. Arb testified she hadn't sold her medication before—an assertion confirmed in a comment she made during the controlled buy and presented to the jury through the audio recording of the transaction. The informant testified otherwise, but his credibility was less than sterling. Moreover, the law enforcement officers had no independent evidence leading them to suspect Arb of drug trafficking until the informant targeted her.

The evidence of entrapment had only to generate a reasonable doubt as to Arb's guilt to warrant an acquittal. But the instructional errors together thwarted the jurors' understanding of that relative slight standard. First, the omission of PIK Crim. 3d 52.08 functionally left the jurors with no guidance as to how the defense and the evidence supporting it ought to be assessed as against the State's evidence for conviction. So the

9

jurors likely did not appreciate that the State had to negate any reasonable doubt Arb had been entrapped.

The jurors' task was further confounded because the entrapment instruction erroneously explained that Arb's ready—and lawful—access to the Percocet could be taken as disproving entrapment. As a result, whatever weight the jurors would have been disposed to accord the entrapment defense was, in all probability, measurably lessened by the flawed instruction the district court did give. See *Miller v. State*, 298 Kan. 921, 937, 318 P.3d 155 (2014) (juries are presumed to follow instructions given by district court); *State v. Race*, 293 Kan. 69, 77, 259 P.3d 707 (2011).

The errors here were not isolated from each other. Rather, each compounded the other, increasing their prejudicial impact. As a result, the jury could not have afforded the entrapment defense appropriate consideration, and Arb would have fared far better with a proper set of instructions. See *Smith-Parker*, 301 Kan. at 168 (multiple evidentiary errors combined with instructional errors on pertinent legal principles resulted in prejudicial cumulative error). The cumulative effect created clear error requiring a new trial.

We, therefore, reverse Arb's conviction and remand to the district court with directions to grant her a new trial.