NOT DESIGNATED FOR PUBLICATION

No. 114,298

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZELL PEARSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed April 14, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Claire M. Hillman*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*: Convicted of several drug crimes following a police search of his residence, Zell Pearson raises several claims of error:

- insufficient evidence;
- several jury instruction errors;
- mishandling of a jury question; and
- cumulative error.

1

We do find clear error in the court's failure to instruct the jury on the lawful possession of hydrocodone. Therefore, we reverse his conviction for that count and remand for further proceedings. The remaining issues he raises are either not error or are harmless errors. We affirm the remainder of his convictions.

*Emporia police searched Pearson's residence.*

During the search of his home, the police found drugs and drug paraphernalia in various locations. In the master bedroom the police found $8,605, a marijuana grinder, a wooden dugout, and 59 Lortab (hydrocodone) pills wrapped in a paper towel. According to the police officer's affidavit, the police found over 300 grams of marijuana. The marijuana in the basement was packaged in various jars and heat-sealed bags. Although characterized by Pearson as "shake"—marijuana bud residue that is unsellable due to minimum potency—some of the marijuana was still in the bud form. A digital scale, a pipe, and another marijuana grinder were found in the basement. The police brought Pearson to the house during the search. At some point, he told the officers about the presence of a previously undiscovered firearm.

After being read the *Miranda* warnings, Pearson talked with the officers. Pearson told them that he purchased a pound of marijuana a week for $4,000. He also provided information concerning from whom he obtained the marijuana and to whom he sold the marijuana. Pearson did not tell the officers whether he intended to sell the marijuana found in his house. Instead, he testified that the marijuana discovered in his house was for his personal use—due to it being "shake" and unsellable. Pearson stated that the Lortab pills were not for sale, but rather were for his own personal use.

Testimony revealed that Pearson's home is located 568.01 feet from Sacred Heart School. Teresa Lien, the principal of Sacred Heart School testified that Sacred Heart

educates children from kindergarten through sixth grade. Sacred Heart is not a part of U.S.D. 253, but as Lien stated, is an "accredited private school."

*The case comes to court.*

The State charged Pearson with one count of possession of hydrocodone with intent to distribute within 1,000 feet of school property, one felony count of possession of drug paraphernalia, one misdemeanor count of possession of drug paraphernalia, and one count of possession of at least 25 grams of marijuana with intent to distribute within 1,000 feet of school property.

The court gave the jury an element-by-element instruction for possession of hydrocodone with intent to distribute and the lesser included offense of simple possession of hydrocodone. No instruction on the lawful possession of hydrocodone was either requested by Pearson or given by the court.

Then the court gave a similar element-by-element instruction for the charge of possession of marijuana with intent to distribute within 1,000 feet of school property. The specific elements in this instruction were:

(1)    The defendant possessed marijuana with intent to distribute;
(2)    the marijuana weighed between 25-450 grams; and
(3)    the act occurred on June 13, 2014, in Lyon County.

The instruction did not include the element of being within 1,000 feet of school property. Instead, a special verdict form was given to the jury, and the jury made a finding that the offense took place within 1,000 feet of school property. Additionally, evidence of Pearson's prior marijuana sales was admitted at trial but Pearson did not request, and the district court did not give, a limiting instruction for this evidence of prior crimes.

3

During deliberations the jury had a question regarding the definition of distribution. The district court conferred with the prosecutor and defense attorney on the record while seeking the appropriate answer. The jury's question was: "In Distribution, to find guilty, does that mean the distrib<u>or</u> caused the substance to change hands, or does distribution also include accepting the substance?"

The prosecutor stated that the jury should refer to the instructions as given. The district court asked Pearson's attorney if there was any objection to this answer, and no objection was given. Accordingly, the court sent the jury a written response to the question which stated: "You must look to the definition of 'distribute' given in your instructions. No further definition will be given."

The jury convicted Pearson of the lesser included crime of possession of hydrocodone, possession of marijuana with intent to distribute within 1,000 feet of school property, and all other offenses as charged. The court sentenced Pearson to a 104-month prison sentence.

We turn now to the issues raised by Pearson. First, we examine the evidence dealing with the school and then take up the matter of the court failing to instruct the jury of the element of the crime requiring the possession to be within 1,000 feet of a school. After that, we examine the failure of the court to give an instruction to the jury concerning the lawful possession of hydrocodone and explain why that is clear error under these circumstances. Next, we hold the court's failure to give a limiting instruction concerning Pearson's prior drug dealing is harmless error. Concerning the handling of the jury question, we find no error here where the court simply referred the jury back to the definition of "distribute" given in the instructions. Finally, we refrain from reversing for cumulative error.

4

*There was sufficient evidence to prove Pearson guilty of possession within 1,000 feet of a school.*

The law increases the severity level of distribution of drugs within 1,000 feet of a school. See K.S.A. 2016 Supp. 21-5705(d)(5). The criminal code defines school property as "property upon which is located a structure used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12." K.S.A. 2016 Supp. 21-5701(r). In this attack on his conviction, Pearson contends that the Sacred Heart School does not qualify as an accredited nonpublic school for purposes of sentence enhancement.

Instead, Pearson contends that because there is no definition of "accredited nonpublic school" for crimes involving controlled substances, see K.S.A. 2016 Supp. 21-5701 *et seq*., he brings us two alternate definitions from noncriminal statutes. Under the statutes Pearson identifies, "accredited nonpublic school" means either a "nonpublic school participating in the quality performance accreditation system" or "all nonpublic elementary and secondary schools accredited by the state board of education." K.S.A. 2016 Supp. 72-89c01(d); K.S.A. 72-1204(b). Because no evidence was presented that Sacred Heart either was accredited by the State Board of Education or participated in the accreditation system, Pearson argues the status of Sacred Heart as an accredited nonpublic school was not proved beyond a reasonable doubt.

Kansas courts have faced the issue of defining school property before. *State v. Star*, 27 Kan. App. 2d 930, 936, 10 P.3d 37 (2000), gives us an analytical framework. In order to enhance the severity level of the crime, three elements must be proved beyond a reasonable doubt:

5

(1) There must be a structure used by either the unified school district or an accredited nonpublic school;

(2) the structure is used for educational purposes for any pupils from kindergarten through grade 12; and

(3) the crime was committed within 1,000 feet of the property on which such a structure is located. See K.S.A. 2016 Supp. 21-5705(d)(5); 27 Kan. App. 2d at 936.

Our Supreme Court spoke to this issue in *State v. Wilt*, 273 Kan. 273, 276-77, 44 P.3d 300 (2002), where it held that in order for a property to be considered school property under the statute, a school must have some property interest in the land—not merely a permissive right to use the property. In *Wilt*, the land at issue were some public ball diamonds that the public high school *was permitted* to use for softball games and practices. Because the public high school did not have a property interest in the ball diamonds, the enhanced sentence for sale within 1,000 feet was overturned and the court remanded for sentencing on the lesser offense. 273 Kan. at 280. *Wilt* offers no help for Pearson's case because no question has been raised concerning whether Sacred Heart had a property interest in its buildings.

Instead, at trial, Principal Lien of Sacred Heart testified that the school was accredited and the property was used for education of pupils from kindergarten through sixth grade. Other testimony established that Pearson's home was 568.01 feet from Sacred Heart. Thus, all three proof requirements set out in *Star* were proved.

We need not labor over the meaning of "accredited nonpublic school" because any accredited school is covered by the statute. This reading of the law clearly is in line with the purpose of these enhancement statutes. The object of the law is to keep drugs and the often associated violence connected with drug dealing from our children. This court recognized this in *State v. Swafford*, 20 Kan. App. 2d 563, 567, 890 P.2d 368 (1995),

6

where the panel held: "[L]ike the federal schoolyard statute on which it was modeled, [the enhancement provision] was intended to create drug-free school zones."

A reasonable juror could conclude from Principal Lien's testimony that Sacred Heart was an accredited nonpublic school, the school taught pupils, and Pearson's residence was within 1,000 feet of the school property. Evidence was presented on all of the necessary elements of the offense and, thus, there is sufficient evidence to uphold the conviction. See *Star*, 27 Kan. App. 2d at 936.

*The court did not properly instruct the jury concerning the 1,000 feet requirement.*

Pearson alleges error because the marijuana elements instruction lacked the essential element that the offense took place within 1,000 feet of school property. Pearson raised no objection to this instruction at trial, so we review it for clear error. See *State v. Martinez*, 288 Kan. 443, 451-52, 204 P.3d 601 (2009).

The State concedes that error occurred. The element of the offense taking place within 1,000 feet of school property is an essential element to the offense. See *Star*, 27 Kan. App. 2d at 936. This element was not contained in the jury instructions, but rather was answered by the jury on a special verdict form. This is a practice not approved by our Supreme Court.

In *State v. Osburn*, 211 Kan. 248, 255-56, 505 P.2d 742 (1973), the Supreme Court prohibited the use of special verdict forms in criminal proceedings. This holding was reaffirmed recently in *State v. Brown*, 298 Kan. 1040, 1046-47, 318 P.3d 1005 (2014). Thus, it is manifest that the district court erred by submitting the essential element to the jury on a special verdict form.

Pearson argues that not including the essential element of occurring within 1,000 feet of school property in the jury instructions requires automatic reversal. In support of this position, Pearson relies upon Section 5 of the Kansas Constitution Bill of Rights, which states: "The right of trial by jury shall be inviolate." However, Kansas Supreme Court precedent does not consider the erroneous use of a special verdict form to be structural error and, thus, automatically reversible. *Brown*, 298 Kan. at 1048.

Even further, completely omitting an essential element of an offense from jury instructions is not structural error. *State v. Daniels*, 278 Kan. 53, 62, 91 P.3d 1147 (2004). Because we are bound to follow Kansas Supreme Court precedent, the error of the district court must be reviewed for harmless error. See *Brown*, 298 Kan. at 1048. If error is harmless, then reversal is not an appropriate remedy. See *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 (2012).

An error is considered harmless if this court is convinced the jury would have found beyond a reasonable doubt that the essential element existed had it been asked in the jury instructions. *State v. Reyna*, 290 Kan. 666, 681-82, 234 P.3d 761 (2010), *overruled on other grounds State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

A similar issue came before this court in *State v. Hudson*, No. 110,433, 2015 WL 249689 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. 1015 (2015). Hudson was convicted of possession of marijuana with intent to distribute within 1,000 feet of school property. The essential element of within 1,000 feet of school property was submitted to the jury on a special verdict form. Although error occurred in submitting the essential element on a special verdict form, this court found the error harmless. 2015 WL 249689, at *5. This court relied upon both the jury's finding on the special verdict form and the evidence presented at trial to find the error harmless. 2015 WL 249689, at *4-5.

The jury's unanimous answer to the special question in *Hudson* "sheds considerable light on the issue." 2015 WL 249689, at *4. In the harmless error analysis, the Kansas Supreme Court allows a reviewing court to consider the jury's answer on the special verdict form. In *Brown*, the jury's answer to a special question on the verdict form established that Brown was over the age of 18 at the time the offense was committed—an essential element of the offense. 298 Kan. at 1049. Here, the jury unanimously found that the possession of marijuana occurred within 1,000 feet of school property on the special verdict form. This tends to show that the jury would have found the essential element beyond a reasonable doubt. See *Brown*, 298 Kan. at 1049; *Hudson*, 2015 WL 249689, at *4.

Additionally, the panel in *Hudson* relied upon the evidence presented and found the evidence was "overwhelming and, in fact, uncontroverted." 2015 WL 249689, at *5. At issue in *Hudson* was the distance between the two locations, and not the status as an accredited nonpublic school. Uncontroverted testimony in *Hudson* proved the distance was less than 1,000 feet.

Here, the uncontroverted testimony of Lien, Sacred Heart's principal is that the school is an accredited private school. Lien's testimony could be used by the jury to find the essential element beyond a reasonable doubt. Additionally, there is no contest over the distance between Pearson's home and Sacred Heart. Based upon the jury's answer on the special verdict form and the evidence presented, the jury's determination was not affected by the error of using the special verdict form. Therefore, the error of using the special verdict form is harmless.

*The court should have instructed the jury on lawful possession of hydrocodone.*

Pearson challenges whether the district court erred by not giving a jury instruction on lawful possession of hydrocodone. Since there was no objection raised about not

9

giving the instruction at trial, we review for clear error. *Williams*, 295 Kan. at 510. The State concedes error occurred by not giving the instruction. A jury instruction is appropriate when the evidence viewed in the light most favorable to the defendant could justify a rational factfinder finding in accordance with the instruction. *State v. Anderson*, 287 Kan. 325, 334, 197 P.3d 409 (2008).

Here, Pearson's theory of defense was that he had lawful possession of the hydrocodone in his house. Pearson testified that he had a valid prescription for hydrocodone. A person may possess a controlled substance for personal use when the substance is prescribed by a medical professional. See K.S.A. 2016 Supp. 65-4116(c)(3). Pearson's testimony, when viewed in the light most favorable to him, supports the theory of lawful possession. See *Anderson*, 287 Kan. at 334. The district court erred by not giving a jury instruction on the lawful possession.

We must decide if the error is harmless. The State does not challenge whether the error was harmless. In *State v. Jaushlin*, No. 104,195, 2011 WL 5833291 (Kan. App. 2011) (unpublished opinion), this court addressed the issue of the harmlessness of failing to give a lawful possession instruction. The panel found the error was harmful because, "[w]ithout the proper jury instruction, Jaushlin had no chance of being found not guilty by the jury of possession of hydrocodone." 2011 WL 5833291, at *5. A jury that is not instructed on a lawful possession theory cannot find for the defendant on that theory. It follows that if a jury is given a lawful possession instruction, when it is supported by the evidence, there is a real possibility that a different decision could be reached by the jury. See 2011 WL 5833291, at *5. We find this reasoning persuasive. Without the instruction here, there is no way the jury could decide whether he had lawful possession of the hydrocodone.

Because no lawful possession jury instruction was given in this case, the error is clear. We must reverse his hydrocodone conviction and remand for further proceedings on this charge.

*The court should have given the jury a limiting instruction concerning the admission of evidence about Pearson's prior sales of drugs.*

Evidence of Pearson's prior sales of marijuana was admitted at trial. Both parties agree this evidence was admissible under K.S.A. 60-455 to at least prove intent. Pearson did not raise any objection to the lack of a limiting instruction at trial; however, the lack of an objection in this case does not preclude review of the failure to provide a limiting instruction for prior bad acts evidence. See *State v. Breeden*, 297 Kan. 567, 579-80, 304 P.3d 660 (2013).

The State concedes error occurred by the court not giving a limiting instruction. Additionally, the Kansas Supreme Court has held that admitting prior bad acts evidence without a limiting instruction is error. See, *e.g.*, *State v. Reid*, 286 Kan. 494, 503, 186 P.3d 713 (2008). However, the failure to include the limiting instruction is not necessarily reversible error. The error is reversible if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict had the trial error not occurred. *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006).

We first examine the count claiming possession of marijuana with intent to distribute within 1,000 feet of school property. The essential elements of the claim are:
- possession of marijuana;
- intent to distribute; and
- the offense occurred within 1,000 feet of qualifying school property.

11

The State presented evidence that Pearson possessed marijuana. Pearson had over 300 grams of marijuana located within his home.

The evidence of Pearson's prior sales of marijuana could be used by the jury to infer his intent to distribute the marijuana. See K.S.A. 2016 Supp. 60-455(b). The State presented evidence that Pearson possessed both buds and "shake." The different varieties of marijuana were packaged and labeled separately. Additionally, Pearson possessed a digital scale near where the marijuana was stored, which tends to show his intent to distribute. The jury could have found this element beyond a reasonable doubt had the limiting instruction been given.

The final essential element is the distribution occurred within 1,000 feet of school property. As we stated earlier, the State must prove three sub-elements:

- There must be a structure used by either the unified school district or an accredited nonpublic school;
- the structure is used for educational purposes for any pupils from kindergarten through grade 12; and
- the crime was committed within 1,000 feet of the property on which such a structure is located. See K.S.A. 2016 Supp. 21-5705(d)(5).

The State presented ample evidence for a reasonable juror to find these elements. Because there is sufficient evidence for the jury to have found all of the essential elements of the offense of possession of marijuana with intent to distribute within 1,000 feet of school property, there is no reversible error as to this offense.

As we are reversing the hydrocodone charge, we need not address the harmlessness of the failure to give a limiting instruction about this crime. But in passing, we note that the jury's determination on this charge tends to show that it did not make an impermissible propensity inference from the prior bad acts evidence. Pearson was

12

charged with possession of hydrocodone with intent to distribute within 1,000 feet of school property. The jury convicted Pearson of the lesser charge of possession of hydrocodone, but not with intent to distribute. This shows that the jury did not make an impermissible propensity inference from the prior bad acts evidence; therefore, the jury's verdict would not have been different had the error not occurred. See *Cooperwood*, 282 Kan. at 581.

*We see no error in how the court handled the jury question.*

Next, Pearson argues the district court erred in its answer to the question asked by the jury. The question was asked by the jury in writing and Pearson was present when it was asked. Pearson did not object to the district court's answer to the question. Pearson is raising this issue for the first time on appeal, arguing he can raise this issue because it implicates his fundamental right to a fair trial. Simply put, he has a right to a properly instructed jury. The State contends this issue may not be raised for the first time on appeal.

Generally, issues not raised before the district court are waived on appeal. In support of its position, the State cites *State v. Groschang*, 272 Kan. 652, 36 P.3d 231 (2001). In *Groschang*, the jury asked to review the Physician's Desk Reference as it pertained to a drug at issue in the case. The PDR was not admitted into evidence during trial, so the district court did not allow the jury to have the entire book. Rather, the district court sent two excerpts from the PDR to the jury which an expert had read from during the trial. Groschang was present at the time the district court made its decision and did not object to providing the excerpts. On appeal, Groschang argued the district court erred because it did not provide a relevant portion of the article on the drug. The Kansas Supreme Court determined Groschang had waived his argument by not raising the issue before the trial court. 272 Kan. at 673.

13

In his reply brief, Pearson argues *Groschang* should not bar his claim because the case is distinguishable. First, Pearson distinguishes *Groschang* by asserting the alleged error here violates his right to a fair trial. Second, Pearson distinguishes *Groschang* factually because there was no evidence that *Groschang* argued an exception to waiver rule. Pearson raised the fundamental right exception to the waiver rule in his brief.

In our view, *Groschang* controls this issue. If it is clear from the record that the defendant is present and is afforded an opportunity to provide input about the court's response to the question, remaining silent or acquiescing to the court's response waives the issue for appeal. See *Groschang*, 272 Kan. at 672-73. When the record is unclear whether the defendant was present or was afforded an opportunity to provide input during the formulation of the answer to the jury question, then the issue is not waived on appeal. *State v. Myers*, 255 Kan. 3, 9, 872 P.2d 236 (1994).

Here, the record is clear that Pearson was present when the court was formulating the answer to the jury's question. Pearson was given an opportunity to provide input when the court asked him if there was any objection, to which Pearson's attorney responded he had no objection. Under the rule in *Groschang*, this issue was waived by being addressed at the district court. 272 Kan. at 672-73.

We find no merit in Pearson's fundamental right to a fair trial argument. The statute, K.S.A. 2016 Supp. 22-3420(d), imposes a mandatory duty to respond to questions asked by a jury in deliberations. See *State v. Boyd*, 257 Kan. 82, 88, 891 P.2d 358 (1995).

In *Boyd*, the Kansas Supreme Court stated that the mandatory duty of the district court is breached "when the trial court makes no attempt to provide a meaningful response to an appropriate request or gives an erroneous response." 257 Kan. at 88. The court here met its duty and gave a meaningful response to the jury:  read the instructions.

14

This case is certainly not like *State v. Bandt*, 219 Kan. 816, 823, 549 P.2d 936 (1976), where the court found a violation of a fundamental right to a fair trial based upon the district court's response to a jury question on a point of law. In *Bandt*, the district court allowed conflicting statements of law—one of which was erroneous—to be presented to the jury when it attempted to answer the jury's question—exacerbating the jury's confusion rather than alleviating it.

We find no error here.

*We will not reverse for cumulative error.*

Cumulative error requires reversal if based upon all of the circumstances the defendant was denied a fair trial because of errors of the district court. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). However, cumulative error does not apply if the evidence against the defendant is overwhelming. *State v. Hart*, 297 Kan. 494, 513-14, 301 P.3d 1279 (2013).

We have found three errors in this record—one is reversible, and two are harmless. When we examine a claim of cumulative error, we are directed by the Supreme Court to compare the nature and number of the errors along with how they relate with each other. Are they mutually reinforcing? See *State v. Carter*, 305 Kan. 139, 166, 380 P.3d 189 (2016).

The error of not including the element of "within 1,000 feet of school property" in the jury instruction has no effect on the error of not providing an instruction on the lawful possession of hydrocodone. But not providing a limiting instruction on the use of the prior bad acts evidence may potentially reinforce the other errors. In our view, the final factor is telling on this point.

15

The final factor is the weight of the evidence. If the evidence overwhelmingly supports conviction then the conviction should not be overturned for cumulative error. *Hart*, 297 Kan. at 513-14. Here, the evidence is overwhelming against Pearson. Pearson had over 300 grams of marijuana in his home. He had previously sold $4,000 worth of marijuana on multiple occasions. The marijuana was packaged in various types of containers. Pearson possessed both buds, which are easily sellable, and shake, which is not as easily sellable. Pearson had a digital scale in close proximity to where the marijuana was stored, which suggests intent to distribute. And there is certainly sufficient evidence to enhance the severity level of the offense for occurring within 1,000 feet of school property.

Under these circumstances, the errors at Pearson's trial did not prevent him from receiving a fair trial. See *Carter*, 305 Kan. at 166. Cumulative error is not a ground for the reversal of all of his convictions.

Pearson's hydrocodone conviction is reversed, all other convictions are affirmed, and the case is remanded to the district court for further proceedings.